660 F.2d 432
 DENVER POLICEMEN'S PROTECTIVE ASSOCIATION, Larry Kier, Paul
Lopez, Jesse Brezzel, Harry Mills, Paul Selander
and Daniel Hendricks, Plaintiffs- Appellants,
v.
Alvin LICHTENSTEIN, a judge of the Second Judicial District
Court; The District Court for the Second Judicial District,
City and County of Denver, State of Colorado; and Michael
Lee Cole, Defendants-Appellees.
 No. 80-1313.
 United States Court of Appeals, Tenth Circuit.
 Sept. 18, 1981.
 
 Jon L. Holm of Holm & Dill, Denver, Colo., for plaintiffs-appellants.
 J. Stephen Phillips, First Asst. Atty. Gen., the State of Colo., Denver, Colo. (J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., and Mary J. Mullarkey, Sol. Gen., the State of Colo., Denver, Colo., with him on the brief), for defendants-appellees.
 Before SETH, Chief Judge, BARRETT and SEYMOUR, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 This appeal is from the district court's dismissal of appellants' complaint for failure to state a claim upon which relief can be granted. The appellants are the Denver Policemen's Protective Association and individual officers of the Denver police force, hereinafter collectively referred to as the Association.
 
 
 2
 The alleged cause of action arose from an order compelling discovery of police investigative files issued by Judge Lichtenstein of the Second Judicial District Court in and for the City and County of Denver. This order was entered following a hearing on a pretrial motion filed in the case of People v. Cole, Criminal Action No. 79CR0664.
 
 
 3
 The defendant in that case, Michael Cole, who is an appellee here, was arrested for assaulting a police officer. In preparation of his defense, Mr. Cole filed a motion to compel discovery of personnel and staff inspection bureau (SIB) files of each police officer present at his arrest. His purpose in requesting the files was discovery of potentially exculpatory material.
 
 
 4
 Judge Lichtenstein granted Cole's motion with the understanding that the court would review the requested material in camera to ascertain if it included exculpatory material. The People sought a writ of mandamus in the Colorado Supreme Court to have Judge Lichtenstein's order vacated. The Colorado Supreme Court dismissed the petition without prejudice.
 
 
 5
 At a subsequent hearing on the motion, Judge Lichtenstein ordered Mr. Cole to issue a subpoena duces tecum to Police Chief Arthur Dill. The People, joined by the Association, filed a motion to quash the subpoena or for protective orders. At the hearing on this motion, Judge Lichtenstein indicated he had reviewed the requested files in camera. He found, after applying a balancing test, that Michael Cole was not entitled to the personnel files but that some of the material in the SIB files was exculpatory. He then ordered in camera inspection of the SIB filed by counsel for the parties. This order was stayed to allow the Association to petition the Colorado Supreme Court for rehearing on the writ of mandamus. The Colorado Supreme Court again denied the petition.
 
 
 6
 The Association then brought an action, from which the instant appeal has been taken, in the United States District Court for the District of Colorado based upon 42 U.S.C.A. § 1983. The Association sought a preliminary injunction and a permanent injunction against defense counsel's discovery of SIB files in the case of People v. Cole. It also sought a permanent injunction against future discovery orders for SIB files by Judge Lichtenstein and the District Court of the Second Judicial District. Defendants, Judge Lictenstein and Michael Cole, filed a motion to dismiss for lack of jurisdiction and failure to state a claim. The District Court conducted an evidentiary hearing on the plaintiffs' motion for preliminary injunction. Plaintiffs presented testimony of some five police personnel and certain documentary evidence. The defendants offered in evidence a copy of the Colorado Open Records statute. These matters were before the court and properly considered in relation to the defendants' motion to dismiss.
 
 
 7
 The District Court dismissed the case for failure to state a claim in light of the Colorado Supreme Court decision in Martinelli v. District Court in and for the City and County of Denver, 612 P.2d 1083 (Colo.1980) (hereinafter referred to as Martinelli ). The Martinelli decision was handed down in the interim of filing this suit and the District Court's dismissal order.
 
 
 8
 The Association contends that the District Court erred in dismissing its complaint in that Judge Lichtenstein's order compelling discovery, (1) violated the police officers' right to privacy in the SIB files, (2) violated a governmental-executive privilege in the files, and (3) denied the police officers equal protection in regard to their right to privacy and privilege against self-incrimination.
 
 I.
 
 9
 To establish a cause of action under 42 U.S.C.A. § 1983, a party must show that the defendant acted under color of state law and, in so doing, deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. Parralt v. Taylor, --- U.S. ----, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976). Thus, in effect, we are asked to decide if the District Court was implicitly correct in finding that Judge Lichtenstein did not deprive the Association of its rights by ordering discovery of the SIB files. More specifically, the issue is whether or not police investigative files are subject to discovery and if so, under what circumstances.
 
 
 10
 The Association contends that the officers and citizens who make statements in the course of an investigation have a right to privacy in the SIB files.[1] The Association defines this right to privacy as a right to confidentiality. It is, specifically, a right to prevent disclosure of personal matters. Whalen v. Roe, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). The United States Supreme Court again identified this right in Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), wherein the Court said,
 
 
 11
 We may agree with appellant that, at least when government intervention is at stake, public officials, including the President, are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity. (Emphasis added).
 
 
 12
 Id. at 457, 97 S.Ct. at 2797.
 
 
 13
 While the SIB files at issue here may have some personal data in them, the documents subject to Judge Lichtenstein's order did not contain personal data. Those documents related simply to the officers' work as police officers. (Testimony of Captain Pennel, R., Vol. II, p. 45).
 
 
 14
 In Martinelli, the Colorado Supreme Court recognized that personal data which is not of a highly personal or sensitive nature may not fall within the zone of confidentiality. Martinelli at p. 1092.
 
 
 15
 In some circumstances the SIB files may contain personal data which could give rise to a right to confidentiality. However, the Association concedes that a right to confidentiality in the files is not absolute. The Association acknowledges the balancing test as set out in Martinelli. In applying this test the court must consider, (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner. Martinelli at 1091.
 
 
 16
 The expectation of privacy is found in the fact that statements by officers taken in the course of investigation are made with the understanding that they are confidential and will not be used for other purposes. The Association attempts, however, to bolster the right to privacy with a Fifth Amendment privilege. The attempt must fail. The connection between the Fifth Amendment privilege against self-incrimination and the right to privacy was discounted in Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).
 
 
 17
 Assuming that the police officers have a legitimate expectation of privacy, the right may be overridden by a compelling state interest. The compelling state interest involved here is ascertainment of the truth.
 
 
 18
 We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.
 
 
 19
 United States v. Nixon, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).
 
 
 20
 Wood v. Breier, 54 F.R.D. 7 (E.D.Wis.1972), involved a § 1983 action by a citizen against police, wherein the court found that the police chief was not entitled to a protective order preventing discovery of police investigative files. The court said:
 
 
 21
 Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.
 
 
 22
 54 F.R.D. at p. 11.
 
 
 23
 Inasmuch as the instant case involves a "swearing match" between the accused and police officers, ascertainment of the truth is of particular importance.
 
 
 24
 Another compelling state interest in discovery of the SIB files is the defendant's right to exculpatory material. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) teaches us that discovery of exculpatory material is a compelling state interest and is, indeed, an integral part of the right to a fair trial. Judge Lichtenstein and Judge Matsch both pertinently observed that when the only prosecution witnesses are the police officers involved, anything that goes to their credibility may be exculpatory. At any rate, Judge Lichtenstein balanced this right to exculpatory material against the officers' right to privacy and determined that the defendant's right to exculpatory material prevailed. In our view this decision was not erroneous.
 
 
 25
 Finally, in discussing the right to privacy, we find that Judge Lichtenstein permitted disclosure of the SIB files in a manner least intrusive on any right to confidentiality the officers may have had. After in camera review, Judge Lichtenstein deleted all materials concerning personal data. In camera inspection has been sanctioned as an appropriate means of disclosure. Nixon v. Administrator of General Services, supra; United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); United States v. O'Neill, 619 F.2d 222 (3d Cir. 1980); Martinelli, supra.
 
 
 26
 It is our view that Judge Lichtenstein correctly applied the balancing test and took every precaution to protect any right to privacy the police officers may have had in the SIB files. There was not "such a gross abuse of privacy as to amount to an abridgement of fundamental constitutional guarantees ..." Baker v. Howard, 419 F.2d 376, 377 (9th Cir. 1969). The District Court implicitly so found in granting the motion to dismiss.
 
 
 27
 The Association claims that it is not being afforded equal protection of its right to privacy. We find no merit in this argument. It is ironic, we believe, that the Association asserts that its right to privacy is the same as a citizen's, no greater or no less, while at the same time asserting that SIB files should be afforded greater protection than citizens' "rap" sheets, which it concedes are routinely discoverable. For purposes of the right to privacy, we fail to discern any distinction between "rap" sheets and SIB files. Both involve investigative materials concerning a person, whether that person be an ordinary citizen or a police officer.
 
 II.
 
 28
 The Association contends that disclosure of SIB files would violate their executive or governmental privilege. We recognize that the distinction between "rap" sheets and SIB files may have some importance relative to the issue of executive privilege.
 
 
 29
 The executive privilege allows governmental department heads to prevent disclosure of documents within their control, if nondisclosure would serve the public interest. The privilege is not absolute. The government's interest in maintaining confidentiality must be weighed against the interest of those who seek discovery of the material. Nixon v. Administrator of General Services, supra; United States v. Reynolds, supra; United States v. O'Neill, supra.
 
 
 30
 The Association asserts that the government interest in confidentiality is of paramount importance because if they cannot guarantee confidentiality, citizens and police officers alike will be reluctant to make statements or likely fail to be completely candid in their statements. They further assert that lack of such statements will impede future investigations and ultimately interfere with the proper functioning of the police department.
 
 
 31
 Judge Lichtenstein's discovery order did not mandate wholesale disclosure of SIB files in every case. The balancing test as applied here and the rules of evidence concerning relevancy and materiality[2] provide safeguards against unlimited review. A trial judge is adequately equipped with the rules of criminal procedure to protect the confidentiality of a witness who fears reprisals. This factor is one to consider in applying the balancing test on a case-to-case basis. Thus, a complete ban on disclosure of SIB files is not necessary to protect the government's or the public's interest. Moreover, it is doubtful that citizens and police officers will absolutely refuse to cooperate in investigations because of a few isolated instances of disclosure. This is evidenced by the fact that, in the past, other Denver police department SIB files have been turned over pursuant to subpoenas. The argument that governmental processes would be frustrated has been rejected by the Supreme Court in United States v. Nixon, supra, at 712, 94 S.Ct. at 3109. In Wood v. Breier, supra, the court rejected the same argument made by the defendant Milwaukee Police Department. The court said:
 
 
 32
 The danger of doing harm to the Milwaukee Police Department by allowing discovery of this file is not nearly so great as the harm that would surely result to the efficacy of our entire legal structure, including the Milwaukee Police Department, if a case such as this were won because the truth was hidden.
 
 
 33
 54 F.R.D. at p. 3.
 
 
 34
 We are not unmindful that the Association has an interest in keeping its files confidential. However, this interest is outweighed by Mr. Cole's interest in and necessity for the materials. In the case of In re Irving, 600 F.2d 1027, 1036 (2d Cir. 1979), cert. denied, 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979) the court discussed the balancing test when a governmental privilege was asserted, and stated:
 
 
 35
 Indeed, the considerations supporting disclosure in the case at bar are even stronger than those in Nixon in that the rights of defendants are at stake rather than the interests of the prosecution.
 
 
 36
 Judge Lichtenstein was careful to limit disclosure of the SIB files so as not to unduly interfere with governmental processes. He specifically instructed counsel that any opinions or policy decisions of investigative officers were exempt from discovery. He personally reviewed counsel's notes to make sure that they so limited their discovery.
 
 
 37
 In further support of their executive privilege claim, the Association asserts that the Colorado Legislature recognized a public interest in maintaining confidentiality by carving out exceptions for police investigative records in the Colorado Open Records Laws, C.R.S. 24-72-101 et seq. (1973), as amended, and the Colorado Criminal Justice Act, C.R.S. 24-72-301 et seq., (1973), as amended.
 
 
 38
 The applicability of these statutes in a similar situation was discussed in Martinelli. As to the legislative intent, the Martinelli court found:
 
 
 39
 We construe this limiting language, in the context of this case, as a reference to the rules of civil procedure and as expressive of the legislative intent that a court should consider and weigh whether disclosure would be contrary to public interest.
 
 
 40
 612 P.2d at p. 1093.
 
 
 41
 Even though Judge Lichtenstein did not have the benefit of the Martinelli opinion at the time of his order, his actions were in accordance with Martinelli.
 
 
 42
 In the interest of comity, we shall defer to the Colorado State Supreme Court's interpretation of Colorado statutory law. Federal courts are directed to give full faith and credit to state court proceedings to the same extent they are afforded full faith and credit in the courts of that state. 28 U.S.C.A. § 1738 (1976). See also: Allen v. McCurry, --- U.S. ----, 101 S.Ct. 411, 66 L.Ed. 2d 308 (1980).
 
 
 43
 Nevertheless, the Association contends that § 1983 is an appropriate vehicle for statutory interpretation when federal constitutional issues are involved. In Allen v. McCurry, supra, the court said:
 
 
 44
 (N)othing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights.[3]
 
 
 45
 --- U.S. at p. ----, 101 S.Ct. at 413.
 
 
 46
 See also: Spence v. Latting, 512 F.2d 93 (10th Cir. 1975), cert. denied, 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975).
 
 
 47
 Consequently, we hold that the Association's executive privilege was not denied to the extent necessary to raise a claim under § 1983.
 
 III.
 
 48
 The Association further asserts a § 1983 claim on the contention that they are being denied equal protection in that they are not being accorded the same privilege against self-incrimination as other witnesses.
 
 
 49
 The privilege against self-incrimination allows any witness or party in a civil, criminal or administrative hearing to refuse to answer a question if he believes the answer may provide evidence of a crime or may lead to evidence of a crime he has committed. Testimony from the record in the instant case reveals that officers are compelled by threat of suspension to give a statement when a complaint is filed against them. However, if the investigators believe that criminal charges may result from the investigation, the officer is advised of his rights and if he refuses, he is not required to give a statement.[4] We recognize that there may be cases where the investigators are mistaken in their belief that no criminal charges will result and an incriminating statement will be compelled. In such circumstances, the Fifth Amendment privileges could still be asserted when disclosure is sought. Such a situation does not exist here. There is no evidence of any pending or potential criminal charges against any of the officers. Thus, we must conclude that the statements made by these officers and contained in their SIB files are not of an incriminating nature. Therefore the officers do not have a valid Fifth Amendment claim. See Fisher v. United States, supra; United States v. Cotton, 567 F.2d 958 (10th Cir. 1977), cert. denied, 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978); Bradt v. Smith, 634 F.2d 796 (5th Cir. 1981), petition for cert. filed 50 U.S.L.W. 3026 (U.S. May 19, 1981) (No. 80-2042).
 
 
 50
 Further, it does not appear that any of the officers specifically claimed a Fifth Amendment privilege in the proceedings before Judge Lichtenstein. Consequently, the officers cannot now claim that Judge Lichtenstein violated their Fifth Amendment right.
 
 
 51
 In summary, we do not find any error in the District Court's dismissal of the complaint.
 
 
 52
 WE AFFIRM.
 
 
 
 [1]
 The Association does not have standing to assert the privacy rights of citizens. Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)
 
 
 [2]
 Judge Lichtenstein found that the defendant Mr. Cole had made a showing that the requested materials were relevant and material. Absent an abuse of discretion, it is for the trial judge to decide if material is relevant. No abuse of discretion is apparent here. Hackbart v. Cincinnati Bengals, Inc., 601 F.2d 516 (10th Cir. 1979), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979); New Mexico Savings & Loan Assoc. v. U.S. Fidelity & Guaranty Co., 454 F.2d 328 (10th Cir. 1972)
 
 
 [3]
 Although the Federal District Court did not decide this case on principles of res judicata, it should be noted that there was an identity of parties in Martinelli and the case at bar. The plaintiff in Martinelli was the Denver Police Department which necessarily entails the individual police officers. The plaintiff herein is the Denver Police Department Protective Association which is composed of and represents officers of the Denver Police Department. Also, the defendants in Martinelli were a judge of the Second Judicial District Court in and for the City and County of Denver and the court itself. The defendant court in Martinelli necessarily entails Judge Lichtenstein
 
 
 [4]
 Q (By Mr. Jon Holm, Counsel for Plaintiffs-Appellants)
 And Exhibit No. 17?
 A (By Captain Lawrence Pennel)
 Exhibit No. 17 is the form statement that is read by every officer before he makes a statement to the Staff Inspection Bureau investigator. It is signed by him, and it says in effect the statement ordering him that he must make a statement regarding this incident that occurred while he was a member of the Denver Police Department, telling him that if he does not make a statement he is subject to immediate suspension and further disciplinary action.
 In it it says that the purpose is not to be used anywhere outside the disciplinary action in the Department, and he specifically says he keeps his right to self-discrimination (sic) with the 14th Amendment.
 Q Is there a present regulation of the Denver Police Department relating to the making of these statements, that is, is a police officer required to make a statement to your bureau upon request?
 A We divide into two different categories. If it is a possible criminal action the officer is advised of his rights.
 Q Miranda rights?
 A Right. Of course, at that time he can get a lawyer and go from there. If he refuses to make a statement he will not be asked, but on a case we feel is not criminal in nature we order him to make a statement regarding his activities in that complaint.
 Q And is he, in fact, subject to disciplinary action if he does not follow that order?
 A Yes. Subject to immediate suspension and the hearing the next day in Division Chief's office.
 Q Is it true that any time an officer is required to make a statement that he is advised of both rights as record in Exhibit 17, and is required to sign that form prior to making a statement?
 A Yes, sir, he is. Every statement he does sign this.