**Donald F. WORDEN, Plaintiff,**

v.

**PROVO CITY, a governmental corporation & political subdivision of the State of Utah, and Swen Nielsen, Defendants.**

**Civ. No. 91–C–1202A.**

United States District Court,
D. Utah.

Nov. 23, 1992.

Robert C. Collins, American Fork, Utah, for plaintiff.

David C. Dixon, Asst. Provo City Atty., Provo, Utah, for defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, Senior District Judge.

This matter comes before the court on Defendants' Motion for Summary Judgment and Plaintiff's Cross–Motion for Sum-

mary Judgment. David C. Dixon, Assistant City Attorney, Provo, Utah, is on the brief for Defendants Provo City and Swen Nielsen [hereinafter collectively referred to as Defendants]. Robert C. Collins, American Fork, Utah, is on the brief for Plaintiff Donald F. Worden. The court, having reviewed the record and the applicable law, grants Defendants Provo City and Swen Nielsen's Motion for Summary Judgment.

## I. BACKGROUND

On December 17, 1984, Defendant Provo City hired Plaintiff Donald F. Worden as a police officer. During his nearly five years with the Provo City police force, he was under the supervision of the chief of police, Defendant Swen Nielsen. His record with the force reveals competent, but not distinguished, service over the next four years.

Worden's troubles with the police department began in late 1988. In September of that year, a citizen complained that he had seen an officer sleeping in his patrol car on several successive Saturday mornings. An investigation revealed that Worden had been assigned to the area where the complaint originated, and Worden admitted that he was the officer that was the subject of the complaint. He claimed, however, that during these morning sessions, he was praying and meditating, not sleeping. On October 12, 1988, as a result of this investigation, Nielsen suspended Worden for two days without pay and warned Worden that another violation of the City's Civil Service Regulations could lead to his dismissal.

On February 6, 1989, Nielsen received another complaint concerning Worden. Apparently, a family had observed Worden "petting with a woman in a parked police car." Aff. of Swen Nielsen at ¶ 5. One witness was especially disturbed by this incident, because it came in full view of her eleven year old son. Worden explained to Nielsen that he merely kissed and embraced his fiance who was riding in his patrol car that day. In a subsequent conversation with Nielsen, however, the witness was adamant that Worden's behavior went beyond a mere kiss and embrace. On the day of this incident, Nielsen wrote an official reprimand to Worden, in which he warned Worden that "any further conduct by you which brings discredit on the Provo Police Department, it is my intent to terminate you." Id. at ¶ 9.

On July 26, 1989, Worden was assigned to a traffic call, but took over forty-five minutes to arrive at the accident scene. Worden's tardy behavior led to another citizen complaint. After investigation, Worden's immediate supervisor, Lt. Mock, recommended Worden's dismissal from the force for this and other derelictions of duty. Following a week of further investigation, Nielsen met with Worden and informed him that he had the option of either resigning or being terminated. On August 15, 1989, Worden tendered his resignation.

Worden's resignation became the source of rumors and discussions within the force. In order to restore order and to prevent disruption over the resignation, the Provo Police Department Newsletter carried an article in its August 25, 1989 edition in which it detailed the events leading to Worden's resignation, including the sleeping, the petting, and the tardy accident response. In publishing this article, the police department sought to quell rumors of unfair treatment against Worden. Id. at ¶ 12. Nielsen felt that these rumors were detrimental to the morale and the efficiency of the police department and that, by detailing the disciplinary actions against Worden, the police department could send a message to the rank and file that similar conduct would not be tolerated. Id. at ¶¶ 12 & 13. The newsletter did not mention the numerous commendations or positive reports that Worden had received during his service with Provo City.

Subsequent to his resignation, Worden received letters of recommendation from both Nielsen and Sergeant Don Messick, a detective with the Provo City Police Department. Pl.Mem.Supp., Exs. C & D. Despite these letters, Worden has been unsuccessful in his efforts to obtain employment in the law enforcement field. Worden contends that he has been unsuccessful because Nielsen and Provo City have blacklisted him. Aff. of Donald Worden at ¶ 4.

Nielsen acknowledges that he spoke with Chief Nordfeldt of the West Valley City Police Department and Chief Jones of the Alpine City Police Department, but contends that, in both instances, he gave positive reports concerning Worden and recommended him for employment. Aff. of Nielsen at ¶¶ 17 & 18.

On November 20, 1991, Worden filed his complaint with the court, alleging that Provo City and Nielsen violated not only his constitutional right to privacy by publishing an account of his resignation in the department newsletter, but also his Fifth Amendment right to due process and Utah Code § 34–24–1 by blacklisting him.[1] He seeks redress for these alleged violations pursuant to 42 U.S.C. § 1983 and attorney's fees pursuant to 42 U.S.C. § 1988. To these claims, Worden appended a state tort law claim for intentional interference with prospective contractual relations. On April 17, 1992, this court dismissed the state tort law claim for failure to file a notice of claim with the state within the statutory time period, but denied dismissal on the remaining claims. The parties now file cross-motions for summary judgment.

## II. DISCUSSION

Worden seeks recovery under 42 U.S.C. § 1983. "Before a successful claim can be brought under 42 U.S.C. § 1983, a plaintiff must demonstrate that he has been deprived of a federal right, and that the right's deprivation was under color of state law." *Gunkel v. City of Emporia,* 835 F.2d 1302, 1303 (10th Cir.1987) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Because the actions of Defendants Provo City and Swen Nielsen arose in the context of official city business, it is undisputed that the alleged deprivations arose under the color of state law. Therefore, to be successful with his claim, Worden must show a deprivation of a federal right. He alleges violations of two federal rights: (1) the constitutional right to privacy; and (2) the Fifth Amendment right to due process.

### A. Summary Judgment

Before addressing the merits of Worden's claims, the court will review the standard for a defendant's summary judgment. Rule 56 of the Federal Rules of Civil Procedure "permits the entry of summary judgment on a claim when there is no genuine issue of material fact." *City Consumer Serv. Inc. v. Horne,* 578 F.Supp. 283, 288 (D. Utah 1984) (citing *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). "As a matter of law, the movant must show entitlement to summary disposition beyond all reasonable doubt." *Id.* (citing *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir. 1980)). If the defendant movant carries its burden, the burden shifts to the nonmoving plaintiff to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this showing, "an adverse party may not rest upon mere allegations or denials of the adverse party's pleading." Fed.R.Civ.P. 56(e). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by … affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Catrett* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

In assessing the sufficiency of the nonmoving plaintiff's showing, the trial judge "must construe all pleadings, affidavits, and depositions liberally in favor of the party against whom the motion is made." *Horne,* 578 F.Supp. at 288 (citations omit-

---

**1.** In his Complaint, Worden avers that he "was told by prominent law enforcement personnel that as a result of contacts by prospective em-ployers with Defendants, Plaintiff would never be able to work in law enforcement in the future." Complaint at ¶ 5.2.

ted). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Where different inferences can be drawn from conflicting affidavits, depositions and pleadings, summary judgment should not be granted." *Horne*, 578 F.Supp. at 288 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). Accordingly, if doubt arises regarding any issue, the court must resolve the doubt in favor of the nonmovant and deny the motion.

### B. Right to Privacy

■ Worden claims that Defendants violated his right to privacy by publishing information concerning Worden's resignation in the Provo City Police Department Newsletter on August 25, 1989. He contends that the account of his resignation in the newsletter placed him in a false light because of inaccuracies and exceeded the bounds of decency.

"The Supreme Court has recognized that the constitutional right to privacy protects an individual's interest in preventing disclosure by the government of personal matters." *Flanagan v. Munger*, 890 F.2d 1557, 1570 (10th Cir.1989) (citing *Whalen v. Roe*, 429 U.S. 589, 599 & n. 24, 97 S.Ct. 869, 876 & n. 24, 51 L.Ed.2d 64 (1977)). The Court reaffirmed, in *Nixon v. Administrator of Gen'l Serv.*, 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977), that public officials "are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity."

The Tenth Circuit recognizes this right to privacy. *See Flanagan v. Munger*, 890 F.2d 1557 (10th Cir.1989); *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432 (10th Cir.1981). In *Lichtenstein*, the Tenth Circuit adopted a three-part balancing test derived from *Martinelli v. District Ct.*, 199 Colo. 163, 612 P.2d 1083 (1980) for determining whether a party has a constitutionally protected property right: (1) whether the party asserting the right has a legitimate expectation of privacy; (2) whether disclosure serves a compelling state interest; and (3) whether disclosure was made in the least intrusive manner. *Lichtenstein*, 660 F.2d at 435.

The Tenth Circuit applied the *Martinelli* balancing test in *Flanagan*, a claim against the Colorado Springs Chief of Police by three Colorado Springs police officers who held part ownership interest in a video store. *See Flanagan*, 890 F.2d at 1560. Apparently, the chief informed the officers that if they did not remove all adult movies from their store, he would order them to do so and give them a letter of reprimand; the officers complied with the chief's request. *Id.* at 1560–61. The chief, believing he had consent from the officers, answered questions from local reporters concerning the incident, including the results of an internal investigation and the fact that the officers would receive written reprimands. *Id.* at 1561. The incident became the subject of several articles in the local press. *Id.* at 1561.

Subsequently, the officers sued the chief alleging, among other things, that the chief's disclosure to the media of their reprimands violated their right to privacy. The Tenth Circuit, affirming the trial court's grant of the chief's summary judgment on the privacy issue, squarely addresses whether information contained in personnel files is of such a highly personal or sensitive nature that it falls within the zone of confidentiality. *Id.* at 1570. Applying the *Martinelli* test, the Tenth Circuit, like the trial court, concluded that the officers did not have a legitimate expectation of privacy in the matters revealed to the press. *Id.* The court reasoned that "data in files 'which is not of a highly personal or sensitive nature may not fall within the zone of confidentiality.'" *Id.* (quoting *Lichtenstein*, 660 F.2d at 435).

Most relevant to Worden's claim are the types of materials that the chief in *Flanagan* revealed to the press: (1) that the

plaintiffs had been reprimanded; and (2) that the reason for the reprimand was their ownership of the video store. *Id.* The *Flanagan* court found that both the reprimand and the reason for the reprimand were matters of public information and were not "of a highly personal nature" that created a constitutional expectation of privacy. *Id.* at 1570–71. Finally, the court rejected the plaintiffs' argument that city policy, regulation, and custom, which stated that information in personnel files would be kept confidential, did not create a constitutionally protected right to privacy. *Id.*

This court has given a lengthy discussion of *Flanagan,* because it is dispositive of Worden's right to privacy claim. This case differs from *Flanagan* in three ways. First, the officers in *Flanagan* were reprimanded for off-duty conduct. If a reprimand for off-duty conduct is a matter of public information, there is no question that Worden's suspension and reprimand for on-duty conduct are also matters of public information. Therefore, Worden does not have a legitimate expectation of privacy in the matters disclosed in the newsletter. Moreover, these disclosed matters were not of a highly personal and sensitive nature sufficient to be accorded constitutional protection. Second, the scope of the publication differs. In *Flanagan,* the reprimands became the subject of several articles in the local press. Still, because the officers did not have a legitimate expectation of privacy, this publication did not violate his right to privacy. Here, Worden's resignation was the subject of one article in the police newsletter. The newsletter article may have chanced into the hands of those outside the Provo City Police Department, but even then, it did not have widespread circulation. Finally, unlike *Flanagan,* in which at least two of the three officers retained their jobs after the public disclosure of their reprimands, Worden had resigned prior to the public disclosure. This difference does not change the result. There is no record before the court that by resigning, rather than being terminated, Worden should be accorded some enhanced right to privacy. Nor does the record reveal a Provo City policy of confidentiality sufficient to rise to the level of constitutional protection. As such this difference does not change the result.

Accordingly, the court concludes that as a matter of law, Worden did not have a legitimate expectation of privacy that rose to the level of constitutional protection. Without such a constitutional right, Worden has no claim, and Defendants' Motion for Summary Judgment on the right to privacy claim must be granted as a matter of law. The court will so order.

### C. Blacklisting

■ Worden's blacklisting claim alleges violations of his Fifth Amendment right to due process and of Utah Code § 34–24–1. To prevail on these claims, Worden must establish two elements: (1) that Defendants "published or blacklisted" Worden; (2) "with intent and for the purpose of preventing such employee from engaging in or securing similar or other employment from any other person, company or corporation." Utah Code Ann. § 34–24–1 (1988). Defendants did make publication concerning Worden in two ways: (1) the article in the Provo City Police Department Newsletter concerning Worden's resignation; and (2) when Nielsen communicated with the West Valley and Alpine City police chiefs. However, to establish blacklisting, Worden must go beyond mere publication. He must establish that the publication was made with the intent to prevent him from obtaining similar employment.

Worden contends, in his Complaint, that Defendants have blacklisted him by providing "information to the prospective employer which was in dispute and which constituted blacklisting under both federal and state law." Complaint at ¶ 5.1. Apparently, he is alleging in paragraph 5.1 that each time he has applied for a job and his prospective employer has contacted Nielsen, that Nielsen has given a disparaging report of Worden or has encouraged the prospective employer not to hire Worden. In the following paragraph of his Complaint, Worden avers that he "was told by prominent law enforcement personnel that as a result of contacts by prospective employers with

Defendants, Plaintiff would never be able to work in law enforcement in the future." Complaint at ¶ 5.2.

Defendants meet these averments, in their Motion for Summary Judgment, with Nielsen's affidavit in which he acknowledges speaking with police chiefs from West Valley City and Alpine City. Aff. of Swen Nielsen at ¶¶ 17 & 18. Nielsen asserts, however, that he spoke of Worden in a positive light and recommended that they hire him. *Id.* Nielsen further states that the purpose for publishing the article concerning Worden's resignation was to restore order in the police department and to warn other officers of the consequences of similar behavior. *Id.* at ¶¶ 12 & 13. Nielsen's affidavit, as the Rule 56 movant, is sufficient, to show Defendants' entitlement to summary disposition of the claim. Defendants, accordingly, have met their burden of showing that there is no genuine issue for trial.

As the court previously noted, when a Rule 56 movant, such as Defendants, carries its burden, the burden shifts to the nonmovant, Worden, to "make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this showing, Rule 56(e) "requires [Worden] to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate *'specific facts* showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)) (emphasis added). The Supreme Court has stated the burden which a plaintiff resisting summary judgment must meet:

> [T]he plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.... Based on ... Rule [56(e)], [*First National Bank of Arizona v.] Cities Service,* 391 U.S. [253] at 290 [88 S.Ct. 1575 at 1593, 20 L.Ed.2d 569 (1968)] held that the plaintiff could not defeat the properly supported summary judgment motion of a defendant charged

with a conspiracy without offering "any significant probative evidence tending to support the complaint".... Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

Worden has failed to make such a sufficient showing because he has failed to show not only specific facts supporting his case, but also any significant probative evidence that would support a jury verdict. Rather he relies on his own affidavit in which he states the following: "I attempted to secure other employment in the law enforcement field, but each time Defendant Nielsen was contacted by my prospective employers, and he told them not to hire me." Aff. of Donald Worden at ¶ 5. This affidavit falls short of establishing an essential element of Worden's claim. Consequently, there is no genuine issue as to any material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and ... it should be interpreted in a way that allows it to accomplish this purpose." *Koopman v. Water Dist. No. 1 of Johnson County,* 972 F.2d 1160, 1164 (10th Cir.1992) (quoting *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53). Worden's blacklisting claim is just such a factually unsupported claim. Therefore, the court grants Defendants' Motion for Summary Judgment on Worden's blacklisting claim on ground that there is no genuine issue of material fact, and Defendants, as a matter of law, are entitled to judgment on this claim.

The court grants Defendants' Motion for Summary Judgment on Worden's claims. The court finds that Worden did not have a legitimate expectation of privacy preventing disclosure of his resignation. Without

such an expectation, Worden did not have a constitutionally protected right to privacy. Therefore, Defendants' could not, as a matter of law, violate Worden's right to privacy.

Similarly, the court grants summary judgment on Worden's blacklisting claim, because Worden has not factually supported his claim. Consequently, he has not met his Rule 56(e) burden and cannot withstand summary judgment. The court's resolution of this matter obviates the need to discuss or rule on Worden's Motion for Summary Judgment.

IT IS SO ORDERED.