Paul L. MASON, Plaintiff,

v.

Timothy John STOCK, and the City of Haysville, Kansas, Defendants.

Civ. A. No. 92–1539–MLB.

United States District Court,
D. Kansas.

Aug. 24, 1994.

Jerry L. Berg, Law Offices of Jerry L. Berg, P.A., Wichita, KS, for plaintiff.

Barbara Scott Girard, Alan L. Rupe, Rupe & Girard Law Offices, P.A., Wichita, KS, for defendants.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter comes before the court on plaintiff's "Motion for Order to Compel Production and for Sanctions" (Doc. 65). Plaintiff seeks to compel the production of items sought in various interrogatories and requests for production (copies attached to plaintiff's motion, Exhibits A–D), including personnel files and internal affairs files of defendant Haysville's police department.

### Background

This is an excessive force action under 42 U.S.C. § 1983. Plaintiff alleges that, on the night of November 7, 1991, while driving

through the city of Haysville, he was stopped by Haysville police officer Timothy Stock, wrongfully accused of driving under the influence of alcohol, removed from his car, roughed up, detained, and taken to a hospital for several hours. Plaintiff's blood-alcohol content was found to be 0.00. Officer Stock, however, claims to have sincerely and reasonably believed that plaintiff was under the influence of alcohol.

The present case is connected with an action before Chief Judge Kelly, *Wilson v. Meeks, et al.,*[1] in which another Haysville police officer is accused of an unwarranted fatal shooting during a traffic stop. Officer Stock was present during that incident. During the traffic stop in the present case, plaintiff apparently asked Officer Stock whether he was going to "shoot me like you did the other guy," referring to the incident at issue in Judge Kelly's case.

Plaintiff's complaint asserts § 1983 claims against both Officer Stock and the City of Haysville for various violations of his constitutional rights, including excessive use of force, false arrest, suppression of freedom of speech, and malicious prosecution. Plaintiff alleges that the City of Haysville is liable under § 1983 because its "policies, customs, practices, systemic deficiencies, lack of training, and failure to properly supervise and discipline" resulted in Officer Stock's excessive use of force against him. (Doc. 1, ¶¶ 27, 64, 108). *See Monell v. Dept. of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978) ("[W]hen execution of a [local] government's **policy or custom** ... inflicts the injury ... the government as an entity is responsible under § 1983.") (emphasis added). He alleges that, prior to the incident in which he was injured on November 7, 1991, Haysville permitted, encouraged, tolerated and ratified a "pattern and practice" of unjustified and unreasonable excessive uses of force and false arrests by police officers, particularly against persons accused of DUI. (¶¶ 28, 65). He further alleges that there was a "Code of Silence" in the Haysville police department which encouraged this alleged "pattern and practice." (¶ 111).

*Plaintiff's Motion to Compel*

Plaintiff served requests for production (RFPs) and interrogatories on the City of Haysville seeking police **personnel files** and **internal affairs files.** Haysville objected to plaintiff's RFPs on essentially two grounds: (1) that the requests were not reasonably calculated to lead to the discovery of admissible evidence; and (2) that the information sought was privileged. Plaintiff subsequently filed this motion to compel.

Plaintiff claims he is entitled to **all** the police personnel files and internal affairs files because they are relevant to his "pattern and practice" claim against Haysville. Plaintiff is particularly interested in records of complaints that have previously been lodged against the Haysville police department, contending Haysville should be ordered to provide access to: (1) all complaints of police misconduct received; (2) all investigatory files and case files related to those complaints; (3) all records of the investigation of those complaints; (4) all documentation related to the disposition of each complaint; and (5) the personnel files of all officers requested and any others named in any such complaint. Plaintiff argues that he and plaintiffs like him will not be able to establish § 1983 claims against municipalities without such information.

Haysville concedes that portions of the personnel and internal affairs files concerning the incident at issue in this case are probably discoverable. However, Haysville maintains that plaintiff is basically on a "fishing expedition" and that much of the information he is seeking is privileged and/or completely irrelevant to this case. With respect to the **personnel files,** Haysville contends that "[a]t least 99% of the documents ... requested cannot even arguably lead to the discovery of admissible evidence" and asserts that many of the files are privileged by virtue of statutorily recognized privacy interests in personnel records. With respect to the **internal affairs files,** Haysville claims that these too are largely irrelevant and, moreover, fall within a "federal common law

---

**1.** *Wilson* is currently before the Tenth Circuit. The defendant officer and the city of Haysville have appealed a ruling by Judge Kelly regarding the issue of qualified immunity.

privilege for the internal investigatory files of police departments [that] has been recognized for at least 25 years." (Doc. 78, p. 13).

The court conferred with counsel about the parties' discovery dispute. Neither parties' counsel appeared willing to compromise. Given counsels' polarized positions, the court reluctantly ordered Haysville to submit all of the police department personnel and internal affairs files to the court for an *in camera* inspection. (Judge Kelly used the same procedure to resolve an identical discovery dispute between these attorneys in *Wilson v. Meeks, et al.*). Haysville complied with the court's order, providing this court with three large cardboard boxes full of police files. The court has laboriously reviewed the items submitted, and is now prepared to rule on plaintiff's motion to compel.

### Discussion

The scope of discovery under Federal Rule of Civil Procedure 26 is exceedingly broad. Parties may obtain discovery regarding any matter that is (1) **"not privileged"** and (2) **"relevant to the subject matter involved in the pending action."** Fed.R.Civ.P. 26(b)(1). The phrase "relevant to the subject matter involved in the pending action" "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). Hence, any nonprivileged information is discoverable so long as it is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

In the present case, as discussed *supra*, Haysville claims that many of the documents sought by plaintiff are not discoverable under Rule 26 because they are either privileged or not reasonably calculated to lead to the discovery of admissible evidence. The court will first consider Haysville's assertions of privilege.

### I. Are any of the police personnel and internal affairs files privileged?

■ In order to determine whether information sought in a discovery request is privi-

leged, the court looks to Federal Rule of Evidence 501, which provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Here, plaintiff has asserted a **federal** civil rights action under 42 U.S.C. § 1983, and thus **federal** rights are to be adjudicated. Accordingly, the second sentence of Rule 501 does not apply, and whether the items plaintiff seeks are privileged depends on the Constitution, Acts of Congress, and general principles of common law viewed in light of reason and experience. *See United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989).

In the present case, Haysville asserts privileges predicated on two types of interests in police personnel and investigatory records. First, Haysville contends that some of the information in its police files, particularly the personnel files, are privileged because of the **privacy interests** of its police officers. Second, Haysville contends that other information, particularly that in the internal affairs files, is privileged because of **public interests** in preventing disclosure.

### A. Privacy interests of police officers

■ As support for its assertion of its officers' privacy interests, Haysville points to Kansas and federal statutes which it contends recognize a right to privacy and confidentiality in police records. The Kansas statute relied upon by Haysville is The Kansas Open Records Act, K.S.A. 45–221(4),

which provides that "a public agency shall not be required to disclose ... [p]ersonnel records, performance ratings or individually identifiable records pertaining to [its] employees." Citing a previous unpublished order issued by Judge Reid of this court, Haysville argues that the privilege created by K.S.A. 45–221(4) in police personnel records and the privacy interests it represents must, in the spirit of comity, be considered in determining whether the personnel files at issue in this federal action are discoverable. There are clearly problems, however, with relying on K.S.A. 45–221(4) to assert a privilege in the present case. First, as stated *supra*, in federal question cases, privilege determinations depend solely on the application of **federal** statutes and general principles of common law as interpreted by **federal** courts. Fed.R.Evid. 501; *see also Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1450 (10th Cir.1990) (mentioning Oklahoma statute recognizing psychotherapist-patient privilege but not deferring to it); *Everitt v. Brezzel*, 750 F.Supp. 1063, 1066 (D.Colo.1990) (holding in § 1983 action against police officer and municipality that "federal common law of privileges" governs). Hence, "[s]imple direct·application" of K.S.A. 45–221(4) in the present case would clearly be improper. *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y.1988) (Weinstein, J.). Moreover, in cases involving alleged civil rights violations by local governmental entities, federal courts must be particularly wary of privileges or other discovery impediments created by **state** lawmakers:

> [S]tate rules protecting state officers must always be viewed with caution because they may be parochially designed to thwart federal interests:
>
> > It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state or local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs

to develop the kind of information they need to prosecute their federal claims.

*King v. Conde*, 121 F.R.D. at 187–88 (quoting *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D.Cal.1987)); *see also Miller v. Pancucci*, 141 F.R.D. 292, 297–98 (C.D.Cal.1992). Nevertheless, in appropriate circumstances, courts have given some weight to state statutes in considering the privacy interests of police officers:

> When it is clear that a desire to ward off civil rights plaintiffs played no role in the formulation of state privilege rules it would be irrational for a federal court to assume that it could learn nothing from state or local views about the severity of the problems that could be created if certain kinds of information were available to civil litigants. Likewise, federal courts generally should give some weight to privacy rights that are protected by state constitutions or state statutes. Of course, how much weight to ascribe to such interests, and how that weight compares with the significance of competing interests, must reside with the federal courts.

*Kelly*, 114 F.R.D. at 656 (citing *Skibo v. City of New York*, 109 F.R.D. 58, 61 (E.D.N.Y. 1985); *Wood v. Breier*, 54 F.R.D. 7, 11 (E.D.Wis.1972)).

The federal statutes relied upon by Haysville in the assertion of its police officers' privacy interests are The Freedom of Information Act, 5 U.S.C. § 552, and The Privacy Act, 5 U.S.C. § 552a. These statutes, like K.S.A. 45–221(4), recognize that some confidentiality should attach to law enforcement officers' personnel records. *See, e.g.,* 5 U.S.C. § 552(b)(6) and (b)(7)(C) (permitting federal law enforcement agencies to withhold certain types of information, including personnel files and investigatory records, from the general public when disclosure would constitute an "unwarranted invasion of personal privacy"). However, neither statute applies to state agencies; nor does either establish the existence of the privilege asserted here. *See* 5 U.S.C. §§ 551(1), 552(e), and 552a(a)(1); *Kerr v. United States Dist. Court for North. Dist.*, 511 F.2d 192, 197 (9th Cir.1975); *Kelly*, 114 F.R.D. at 656 (indicat-

ing the Freedom of Information Act is "not a source of privilege at all").

■ Haysville neglects the most obvious source of privacy interests: The Constitution. Rule 501 clearly authorizes federal courts to consult constitutional provisions in making privileges determinations. In *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432 (10th Cir.1981), a case not cited by Haysville, the Tenth Circuit considered whether and to what extent police officers had a right to prevent disclosure of personal matters within police personnel and investigative files. *Id.* at 435. Looking primarily to substantive due process decisions of the Supreme Court, *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) and *Nixon v. Administrator of General Services*, 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977), the court acknowledged the existence of such privacy interests.[2] The court then adopted the "Colorado test" for determining whether information contained in police and other governmental files is "of such a highly personal or sensitive nature that it falls within the zone of confidentiality." *Flanagan v. Munger*, 890 F.2d 1557, 1570 (10th Cir.1989) (discussing *Lichtenstein*). Under this test,

> the court must consider, (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner.

*Lichtenstein*, 660 F.2d at 435 (citing *Martinelli v. District Court in and for the City and County of Denver*, 199 Colo. 163, 612 P.2d 1083, 1091 (1980)).

Since *Lichtenstein*, the court has continued to recognize a constitutional right to privacy and confidentiality in personal information within government records. *See Flanagan*, 890 F.2d at 1570 ("The Supreme Court has recognized that the constitutional right to privacy protects an individual's interest in

preventing disclosure by government of personal matters.") (citing *Whalen* ); *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir.1986) ("Due process thus implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state."). Based on these authorities, the court concludes that the Haysville police officers have constitutionally-based privacy interests in personal matters contained within their police files and that such matters may be privileged.

■ It is a "venerable legal axiom that privileges are to be narrowly, not expansively, construed." *Hill v. Sandhu*, 129 F.R.D. 548, 550 (D.Kan.1990) (citing *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974)). This is especially true in federal civil rights actions, where an assertion of privilege must "'overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action.'" *Skibo v. City of New York*, 109 F.R.D. at 61 (quoting *Wood*, 54 F.R.D. at 13). Moreover, the privacy interests of police officers in personnel records "should be especially limited in view of the role played by the police officer as a public servant who must be accountable to public review." *King*, 121 F.R.D. at 191.

■ Construing the privacy interests of the Haysville police officers narrowly in the present case, the court views only one type of item in their personnel files as so highly personal and sensitive in nature that it should be safeguarded as privileged: the psychological evaluations of each of the Haysville police officers, including Officer Stock. *See Lichtenstein*, 660 F.2d at 435. All other items concern more official, duty-connected types of information, such as payroll and vacation/absence records, official oaths, letters of appreciation, and periodic performance evaluations, and these clearly are not privileged.

---

2. The court also looked to provisions of the Colorado Open Records Laws, C.R.S. § 24–72–101 *et seq.*, similar to K.S.A. 45–221(4). However, in subsequent opinions, the court has focused on constitutional guarantees of due process and not state statutory provisions. *Flanagan v. Munger*, 890 F.2d 1557, 1570 (10th Cir.1989); *Mangels v.*

*Pena*, 789 F.2d 836, 839 (10th Cir.1986) (identifying fire fighters' privacy interests in personal information possessed by the state as founded upon rights of substantive due process derived from the Constitution, not upon state statutory provisions).

B. *Public interests in internal affairs files*

■ The second type of privilege asserted is characterized by Haysville as a "self-policing privilege." (Doc. 65, attachments, Haysville's responses to plaintiff's RFPs). It is akin to the "executive privilege," *Lichtenstein,* 660 F.2d at 437, "official information privilege," *Kelly,* 114 F.R.D. 653; *King,* 121 F.R.D. at 190, and "self-critical analysis privilege," *Skibo,* 109 F.R.D. at 63–64, discussed by other federal courts. This privilege focuses on public interests in keeping police files confidential. The "self-policing" or "self-critical analysis" privilege in particular is predicated on the notion that disclosure of officers' observations made during past internal investigations of their co-officer's alleged misconduct could have a chilling effect on their willingness to be candid in criticizing their fellow officers during future investigations. *Lichtenstein,* 660 F.2d at 437; *Skibo,* 109 F.R.D. at 63–64 (describing "self critical analysis privilege" as aimed at "assur[ing] that subordinates within an agency will feel free to provide the decision maker with their uninhibited opinions and recommendations"); *King,* 121 F.R.D. at 192 (discussing this aspect of the "official information" privilege as based on the theory that disclosure will "compromise internal police investigations by inhibiting the candor of police officers contributing information to those files"). Federal courts recognizing this privilege balance the various factors weighing in favor and against disclosure to determine whether police files should be disclosed. *Lichtenstein,* 660 F.2d at 437–38; *King,* 121 F.R.D. at 190–97.

After giving considerable thought to the arguments and authorities supporting a "self-policing" or "self-critical analysis" type of privilege, the court is unwilling to find that such a privilege exists in the present case. First, because privileges restrict access to facts and therefore can interfere with the search for the truth, this judge is philosophically opposed to the unnecessary multiplication of the number of privileges floating around in the sphere of federal jurisprudence under the rubric of general principles of common law. The Supreme Court has recently reiterated that " '[t]here is no federal general common law,' " *O'Melveny & Myers v. F.D.I.C.,* —— U.S. ——, ——, 114 S.Ct. 2048, 2053, 129 L.Ed.2d 67 (1994) (quoting *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)), and the Court "has taken a cautious approach to expansion of common law privileges," *United States v. Burtrum,* 17 F.3d 1299, 1301 (10th Cir.1994) (discussing *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); *United States v. Gillock,* 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980); *University of Penn. v. EEOC,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990)). This court is consequently reluctant to acknowledge the existence of privileges beyond those traditionally recognized by the common law, such as the attorney-client privilege.

Second, the theoretical basis underlying a "self-policing" or "self-critical analysis" type of privilege (set forth *supra* ) is, in this judge's view, fundamentally flawed. It has been questioned and challenged by many, including the Tenth Circuit and the revered Judge Weinstein. The Tenth Circuit has stated: "[I]t is doubtful that citizens and police officers will absolutely refuse to cooperate in investigations because of a few isolated instances of disclosure." *Lichtenstein,* 660 F.2d at 437. Judge Weinstein goes even further, thoroughly attacking the "chilling effect" concept and persuasively arguing that disclosure of police files to civil rights litigants is, at best, a "minute influence on officers' candor" and can, in some circumstances, serve to "increase candor [rather] than chill it." *King,* 121 F.R.D. at 192–93.

■ Third, even if the court was to recognize a so-called "self-policing privilege," the court does not find it applicable here. It is well established that a party asserting that documents or other materials covered by a production request are privileged must **specifically** identify those documents or other materials. *Conoco, Inc. v. United States Dept. of Justice,* 687 F.2d 724, 730 (3d Cir. 1982); *Kelly,* 114 F.R.D. at 669. Blanket assertions of privilege will not do. Moreover, as stated *supra,* privileges are to be construed especially narrowly when asserted by officers or cities in federal civil rights actions.

In the present case, Haysville has produced no evidence that its police officers have "clammed up" during past investigations and evaluations or will "clam up" in the future because internal affairs files are disclosed. Haysville has not established that any of the files contain statements by officers which, if disclosed, would inhibit them from being candid later on, and thus Haysville has not shown that the files fall within the narrowly-construed confines of the self-policing or self-critical analysis privilege it has asserted.

> Unless the government [Haysville], through competent declarations, shows the court *what interests* would be harmed, *how* disclosure under a protective order would cause the harm, and *how much* harm there would be, the court cannot conduct a meaningful balancing analysis.

*Kelly,* 114 F.R.D. at 669; *see King,* 121 F.R.D. at 189.

II. *Are the files "reasonably calculated to lead to the discovery of admissible evidence"?*

 Having thoroughly considered Haysville's assertions of privilege, the court must finally determine whether items in the personnel files and internal affairs files do not fall within the exceedingly broad scope of permissible discovery under Rule 26. This determination is made difficult by the court's relative lack of familiarity with the case. *See Everitt v. Brezzel,* 750 F.Supp. 1063, 1067 (D.Colo.1990) ("[C]ourts are rarely, if ever, in the best position to evaluate ... the importance of the information sought to the plaintiff's case."). This court is being asked to decide what information within a voluminous group of files is conceivably relevant to plaintiff's claims when the court is not sure what plaintiff's arguments and litigation strategies in support of his claims are going to be!

Given its limited familiarity with this case, this court is not prepared to rule that any of the nonprivileged items in the police files are not "reasonably likely to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Haysville contends that most of the items have nothing to do with this case and that plaintiff's counsel is on a giant fishing expedition. However, under Rule 26, the time-honored cry of "fishing expedition" can no longer "serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor,* 329 U.S. 495, 507–08, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). Although § 1983 excessive force plaintiffs should not be allowed to conduct unlimited discovery of police files based on "boilerplate allegations," *Strauss v. City of Chicago,* 760 F.2d 765, 768 (7th Cir.1985), in a case such as the present one, where there is a related case involving allegations of excessive force and the two cases do not clearly stand in isolation, plaintiff is entitled to some leeway, *see City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (distinguishing § 1983 cases involving "a single incident" of unconstitutional activity).

Undoubtedly, many of the items in the police files are not going to be admissible at trial. However, the pertinent issue at present is discoverability, not admissibility, and this judge will not be unwittingly drawn into making premature determinations that certain items are inadmissible. At the same time, plaintiff's counsel should not take the court's ruling as authorization to invade the personal lives of Haysville police officers or make a federal case out of every expression of dissatisfaction aimed at the Haysville police department. The court is simply giving plaintiff a full and fair opportunity to come up with evidence that substantiates his "pattern and practice" claims.

In closing, let all counsel practicing before this judge take heed: This judge **will not** be haunted by the prospect of having to handle discovery disputes like this one in the future, especially those involving time-consuming *in camera* inspections. This judge **will not** step in and be counsels' referee with respect to every bone of contention they have. Counsel are expected to know the rules and to advise their clients to follow them, even when the client objects. Moreover, this judge expects counsel to cooperate with one another and to make bona fide attempts at resolving disputes before bringing them before the court. The following quote from another case involving *in camera* inspections of police files expresses this judge's senti-

ments about counsel's handling of this and similar disputes and should be taken as an admonition against similar future conduct:

> This case is a prime example of why it should be incumbent on the attorneys to make a **good faith** effort to resolve as much of this type of dispute as possible before resorting to the court. In this case, defendants are asking the court to comb through seven personnel files and seven internal affairs histories which defense counsel has characterized as "extensive and voluminous documents and materials." There is no doubt that there will be material in at least the personnel files that plaintiffs may not need nor want. It is a great burden for the court, and consumes a great deal of the court's time, to go through each of these files only to be looking at medical histories, emergency contact forms, payroll plans, etc. This is the type of review the attorneys should be conducting long before approaching the court. It is certainly not fair to the taxpayers of this country to have to pay the costs and expenditures of the federal courts for work that attorneys should be doing.

*Hampton v. City of San Diego,* 147 F.R.D. 227, 229–30 (S.D.Cal.1993) (emphasis added).

**IT IS ACCORDINGLY ORDERED** that plaintiff's motion to compel (Doc. 65) is granted with the exception of the items identified in this opinion as privileged. Plaintiff's motion for sanctions is denied.

A motion for reconsideration of this order is **not** encouraged. Should such a motion be filed, it shall comply strictly with the standards set forth in *Comeau v. Rupp,* 810 F.Supp. 1172 (D.Kan.1992), and shall be limited to 5 pages, including exhibits and attachments, if any. A response shall be similarly limited. No reply shall be filed.

Haysville's counsel shall pick up the records submitted *in camera.* Copies of the items identified herein as privileged shall be filed with the clerk in a sealed envelope to be opened only upon the order of this court or a reviewing court.

Within twenty (20) days of the date of this order, Haysville shall make the nonprivileged police records available for inspection and copying by plaintiff's counsel. Counsel shall agree upon and submit to the court a protective order prohibiting the use of the records outside this case. Records deemed discoverable in this case shall not be used in *Wilson v. Meeks, et al.* unless they have also been deemed discoverable by Judge Kelly. The records shall be disclosed only to those who are connected with this case—a party, an attorney, or a legitimate witness—and those to whom the records are disclosed must sign a statement acknowledging that they have read and will abide by the protective order. Disclosure of any Haysville police records to the media or public at large will result in the imposition of harsh sanctions.