J. Gary SHEETS, Plaintiff–Appellee,

v.

SALT LAKE COUNTY, a governmental subdivision of the State of Utah; and Michael George, individually and as Salt Lake County Investigator, Defendants–Appellants.

Nos. 93–4128, 93–4134.

United States Court of Appeals, Tenth Circuit.

Jan. 10, 1995.

Kent B. Linebaugh (Jennie B. Huggins with him on the brief), of Jardine, Linebaugh, Brown, & Dunn, Salt Lake City, UT, for plaintiff-appellee.

Patricia J. Marlowe, Deputy Salt Lake County Atty. (David E. Yocum, Salt Lake County Atty., with her on the brief), Salt Lake City, UT, for defendants-appellants.

Before KELLY, and HENRY, Circuit Judges, and VAN BEBBER, District Judge.[†]

† The Honorable G.T. Van Bebber, United States District Judge for the District of Kansas, sitting by designation.

PAUL KELLY, Jr., Circuit Judge.

In No. 93–4134, Defendants–Appellants, Salt Lake County and Michael George, appeal a $650,000 judgment on a jury verdict and in No. 93–4128, they appeal a $77,896.93 judgment for attorney's fees entered against them. They contend that the district court erred by (1) refusing to hold Plaintiff's 42 U.S.C. § 1983 action time-barred under Utah Code Ann. § 78–12–28(3), (2) denying Defendants' motion to dismiss and motion for judgment as a matter of law, (3) refusing to admit into evidence two books and newspaper articles, (4) denying Defendants' motion for remittitur, (5) denying Defendants' motion for new trial, and (6) granting the Plaintiff unreasonable attorney's fees. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

*Background*

On October 15, 1985, two bombs exploded in Salt Lake City. One killed Steve Christensen, a former employee and executive of Coordinated Financial Services ("CFS"). The other killed Kathy Sheets, the wife of Gary Sheets, chairman of the board and president of CFS. These events generated a great deal of media interest.

A few weeks after Kathy Sheets' death, the police asked Gary Sheets for a copy of his wife's diary. According to Salt Lake City Detective Jim Bell, this was a common practice. Aplee.App. at 144. Gary Sheets read his wife's diary. Believing that the diary would remain confidential, Gary Sheets voluntarily turned the diary over to Detective Bell. Detective Bell testified that he could not recall whether he had assured Mr. Sheets the contents of the diary would remain confidential. Aplt.App. at 115. Salt Lake City Detective Ken Farnsworth testified, however, that he had told Mr. Sheets that the diary would remain confidential and communicated this message orally to those working on the case. Aplt.App. at 187; 193.

Copies of the diary were distributed to the investigators and detectives assigned to the case, one of whom was the Defendant, Salt Lake County Investigator Michael George. At trial, Mr. George testified that he reviewed the diary, photocopied certain excerpts, and made thorough notes of the diary's entries for his files.

In January 1987, Mark Hoffman pleaded guilty to the murders of Steve Christensen and Kathy Sheets. Once Mr. Hoffman was sentenced to prison, the criminal investigation of the bombings ended. The investigative file, including the diary, was then archived, making it available for public inspection.

At that time, the Salt Lake County Attorney's Office had an unwritten policy that permitted its employees to speak to members of the press about their cases once an investigation closed, as long as the officers treated members of the press in an evenhanded fashion. Aplt.App. at 131. Pursuant to this policy, Mr. George met with three people who were writing books about the Hoffman murders, including his good friend Robert Lindsey. When he met with Mr. Lindsey, he allowed him to examine his file box of notes. Mr. George testified that this box may well have contained the photocopies and handwritten notes he had taken from the diary. By contrast, Mr. George did not provide the other authors with access to his files. Instead, those authors asked him questions and he responded, often referring to his notes. Mr. George destroyed his note files before the publication of Mr. Lindsey's book.

All three authors published books about the Hoffman murders. Mr. Lindsey's book was the only one, however, to contain direct quotations from Kathy Sheets' diary. On June 2, 1989, Mr. Sheets filed suit against Salt Lake County and various prosecutors and police officers asserting state and federal violations, including a claim for constitutional invasion of privacy. On December 4, 1990, Mr. Sheets amended his complaint to add a § 1983 claim against the County, Mr. George, and Salt Lake County Attorney Theodore Cannon. Only Mr. George and the County remained as Defendants throughout the trial. At the close of the Plaintiff's case, Defendants moved to dismiss, in reality a motion for judgment as a matter of law, Fed.R.Civ.P. 50(a), which the district court denied.

Defendants then put on their case, and sought to offer into evidence excerpts from

the other authors' books as well as newspaper articles about Kathy and Gary Sheets. The Plaintiff objected to admission of these exhibits on grounds that they were irrelevant. The district court sustained the objection, but excluded the evidence on grounds of lack of foundation. At the close of all the evidence, Defendants moved for judgment as a matter of law. *Id.;* Aplt.App. at 341.

The jury returned a verdict of $650,000 in favor of Mr. Sheets. Defendants then filed motions for judgment as a matter of law, Fed.R.Civ.P. 50(b), new trial, and remittitur. Aplt.App. at 81–82. The district court denied each of these post-trial motions.

Plaintiff subsequently filed a motion for attorney's fees and other costs. Defendants filed objections, and the district court entered an order awarding Mr. Sheets $77,896.93 in attorney's fees.

## *Discussion*

### I. Statute of Limitations

■ Defendants initially contend that the district court erred by refusing to bar Mr. Sheets' § 1983 action under the two-year statute of limitations contained in Utah Code Ann. § 78–12–28(3), which purports to apply specifically to § 1983 actions. We have previously held, however, that in enacting Utah Code Ann. § 78–12–28(3), the Utah legislature exceeded its authority and as such this section is invalid. *Arnold v. Duchesne County,* 26 F.3d 982, 989 (10th Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 721, 130 L.Ed.2d 626 (1995). Instead, a four-year statute of limitations under Utah Code Ann. § 78–12–25(3) governs § 1983 actions. *See id.* at 985. Since Mr. Lindsey's book was published in August 1988, and Mr. Sheets filed suit within four years of this date, Mr. Sheets' § 1983 claim was not barred under the applicable statute of limitations.

### II. Denial of Motions for Judgment as a Matter of Law

■ Defendants claim that the district court erred by denying their motions for judgment as a matter of law. We review *de novo* the district court's denial of Defendants' motions for judgment as a matter of law.

*See F.D.I.C. v. United Pacific Ins. Co.,* 20 F.3d 1070, 1079 (10th Cir.1994). To overturn the denial, "we must conclude that 'viewed in the light most favorable to the nonmoving party, the evidence and all reasonable inferences to be drawn therefrom point but one way, in favor of the moving party.'" *Id.* (quoting *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 467 (10th Cir.), *cert. denied,* 498 U.S. 898, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990)).

Defendants first argue that Mr. Sheets had no legitimate expectation of privacy in his wife's diary, claiming that he gave it to the authorities without any restrictions on its use. They further argue that the Plaintiff produced insufficient evidence of proximate cause to warrant submission of the issue to the jury and insufficient evidence for the jury to conclude that Mr. George intentionally violated Mr. Sheets' right of privacy. We disagree.

### A. Expectation of Privacy

Cases involving the constitutional right of privacy address two distinct interests: "[o]ne is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–77, 51 L.Ed.2d 64 (1977). Here, we are concerned only with the former of these interests. We have held that "[d]ue process ... implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state." *Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir. 1986).

■ Information falls within the ambit of constitutional protection when an individual has a "legitimate expectation ... that it will remain confidential while in the state's possession." *Id.* The legitimacy of this expectation depends, "at least in part, upon the intimate or otherwise personal nature of the material which the state possesses." *Id.* If an individual has a legitimate expectation of confidentiality, then "[d]isclosure of such information must advance a compelling state interest which, in addition, must be accomplished in the least intrusive manner." *Id.*

(citing *Denver Policemen's Protective Assoc. v. Lichtenstein,* 660 F.2d 432, 435 (10th Cir. 1981)). Defendants do not contend that there was any compelling state interest in warranting disclosure and we believe that whether the diary was to be kept confidential as well as whether the material is sufficiently personal to be subject to protection were questions for the jury to resolve based upon the evidence.

Defendants have mischaracterized the issue. Plaintiff does not claim an interest in avoiding disclosure of his deceased wife's general feelings and thoughts, rather he claims an interest in avoiding disclosure of things personal to him, such as his wife's written perceptions of their marriage. Upon review of Mrs. Sheets' diary and the record, a jury could easily find that the diary contained information about Mr. Sheets that only a spouse would know and that such information was both intimate and personal to Mr. Sheets. Moreover, Mr. Sheets' and Detective Farnsworth's testimony that both parties considered the diary to be confidential, leads us to conclude that there was ample evidence for a jury to conclude that Mr. Sheets legitimately expected his wife's diary to remain confidential while in the hands of the police. *See* Aplt.App. at 187–88; 229.

■ The fact that Mr. Sheets did not author the information does not prohibit him from having a distinct privacy interest in the dissemination of information written about the personal aspects of his life. *See Nixon v. Administrator of General Services,* 433 U.S. 425, 458, 97 S.Ct. 2777, 2797–98, 53 L.Ed.2d 867 (1977) ("This expectation is independent of the question of ownership of the materials . . . ."). Our analysis of one's expectation of privacy in this area focuses upon the nature of the material opened to public view, *see Nilson v. Layton City,* 45 F.3d 369, 371–72 (10th Cir.1995), not on the individual who penned the pages on which this information appears.

■ Arguably, the information is not extremely sensitive in nature, in other words, the facts revealed in the diary about Mr. Sheets are not particularly controversial or embarrassing. However, information need not be embarrassing to be personal and whether it is sufficiently personal to be protected is, in this case, a legitimate question for the jury. We find that information conveyed to one's spouse or that one's spouse has observed about one's character, marriage, finances, and business to be personal in nature and subject to a reasonable expectation of privacy.[1] Mrs. Sheets' diary entries about her husband and their marital relationship are certainly as personal as medical and certain financial records, which courts have placed within the ambit of constitutional protection. *See United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3d Cir.1980) (medical records); *Fraternal Order of Police, Lodge 5 v. Philadelphia,* 812 F.2d 105, 115 (3d Cir.1987) (financial records).

The fact that Detective Bell could not recall whether he had initially assured Mr. Sheets of the diary's confidentiality does not negate both Mr. Sheets and Detective Farnsworth's testimony that an understanding of confidentiality did exist. In addition, the very nature of the item—a diary, a place traditionally reserved for the recording of private thoughts—which was given to the police for the specific purpose of aiding their investigation, bolsters Mr. Sheets' claim that he expected the item to remain confidential.

Defendants contend that Mr. Sheets could not have expected the diary to remain confidential, considering the many investigators who had access to the diary. Defendants gloss over a crucial point. To turn a diary over to a limited group for what one perceives to be a limited and proper purpose is quite different than inviting publication of the material.

■ Finally, although this point is conceded by Defendants, we find no compelling

---

1. Though the common law tort of invasion of privacy does not control the federal constitutional claim, we find that the tort, as defined by § 652D of the Restatement, provides some guidance as to what constitutes a reasonable expectation of privacy. Accordingly, we note that the information revealed from Kathy Sheets' diary did not involve a matter of public concern, and its public disclosure could be considered highly offensive to the reasonable person. *See Restatement (Second) of Torts* § 652D (1977).

state interest in Mr. George's disclosure of the diary excerpts to Mr. Lindsey. We have found, for example, "compelling state interest" in the disclosure of confidential statements police officers made for investigative files. *See Lichtenstein,* 660 F.2d at 436. The files in *Lichtenstein* were discoverable because the state's interest in ascertaining the truth in a criminal proceeding in addition to defendants' rights to exculpatory evidence outweighed the officers' legitimate expectation of privacy in the files. *Id.* In this case, Defendants have supplied no such compelling interest in the dissemination of Mrs. Sheets' diary to Mr. Lindsey.

### B. Proximate Cause

■ Defendants also claim that Mr. Sheets failed to establish Mr. George as the proximate cause of Mr. Sheets' injury. We again must disagree. After hearing the evidence at trial, the jury concluded that Mr. George was responsible for disseminating the diary excerpts to Mr. Lindsey. Nonetheless, Defendants claim that there was insufficient evidence adduced at trial to hold Mr. George accountable as the proximate cause of Mr. Sheets' privacy violation.

We have held if "competent evidence [is] introduced, even though conflicting, the question[ ] of . . . proximate cause must be left to the jury." *Key v. Liquid Energy Corp.,* 906 F.2d 500, 505 (10th Cir.1990). Mr. Lindsey testified that there were three possible sources of the diary information: Detectives Farnsworth, Cannon, and George. Mr. Farnsworth denied giving the information to Mr. Lindsey. Mr. Cannon testified that he did not have a copy of the diary nor did he keep meticulous notes based on the diary. Mr. George, on the other hand, testified that he made photocopies and took exact notes from the diary, that he kept these excerpts in his files, that he was very good friends with Robert Lindsey, and that he let Mr. Lindsey look through his files. We deem this to be ample evidence for a jury to conclude that Mr. George proximately caused the invasion of Mr. Sheets' privacy.

■ Defendants additionally claim that Mr. George cannot be considered the proximate cause of Mr. Sheets' § 1983 violation because he did not intentionally cause Mr. Lindsey to use the diary excerpts in the book. Defendants misconstrue the meaning of proximate cause. A defendant is the proximate cause of a plaintiff's injury if the injury a natural consequence of defendant's actions. *Id.* Since the jury surmised that Mr. George was responsible for disseminating the information to Mr. Lindsey, Mr. George was indeed the proximate cause of Mr. Sheets' injury.

### C. Insufficient Evidence of Intentional Conduct

■ Defendants contend that the Plaintiff failed to prove that Mr. George intentionally violated his constitutional right, as required by the court's instruction to the jury. According to Defendants, Plaintiff established mere negligence. We disagree.

The district court instructed the jury to find that Defendants violated Plaintiff's constitutional right to privacy only if Mr. George "intentionally committed the acts which violated Plaintiff's constitutional right." *See* Aplee.Supp.App. at 172. The court further instructed that "specific intent to deprive Plaintiff of a constitutional right" is not necessary; instead, "it is sufficient if Plaintiff can prove that a Defendant intentionally committed the acts which resulted in the violation of Plaintiff's constitutional right." *Id.* Defendants did not object to these jury instructions, and they are not at issue. Viewing the evidence and all reasonable inferences in favor of the verdict, as we must, see *Brown v. McGraw–Edison Co.,* 736 F.2d 609, 612–13 (10th Cir.1984), we find that sufficient evidence was proffered at trial for the jury to conclude that Mr. George intentionally, as opposed to negligently, disclosed the diary information to Mr. Lindsey.

■ Defendants advanced several additional arguments to the district court in support of their motion to dismiss, including that Mr. Sheets was a public figure both as a result of his position in the Mormon Church as well as a result of a federal prosecution for which he was acquitted. In this appeal, however, Defendants only briefed and argued that the lower court erred "because plaintiff

had no reasonable expectation of privacy in his murdered wife's diary which he gave to the Salt Lake City Police Department without any restrictions ... and because plaintiff had insufficient evidence of proximate cause to warrant submission to the jury." Aplt. Br. at 22. Although we are not persuaded by any of the points presented to the district court, a party who chooses not to brief a particular point, ordinarily is deemed to have waived the contention on appeal. *McKinsey v. Sentry Ins.,* 986 F.2d 401, 407 (10th Cir. 1993); *Bledsoe v. Garcia,* 742 F.2d 1237, 1244 (10th Cir.1984); *Whitehead v. Salyer,* 346 F.2d 207, 209 n. 2 (10th Cir.1965).

For the foregoing reasons, we affirm the district court's denial of Defendants' motions for judgment as a matter of law.

### III. Admission of Evidence

Defendants claim that the trial court erred by excluding the books and newspaper articles Defendants tried to introduce into evidence. "A district court possesses considerable discretion in governing the presentation of evidence, and its decisions will not be disturbed absent manifest injustice to the parties" and clear abuse of discretion. *Comcoa, Inc. v. NEC Tels., Inc.,* 931 F.2d 655, 663 (10th Cir.1991); *Orth v. Emerson Elec. Co.,* 980 F.2d 632, 639 (10th Cir.1992).

■■■ When Defendants sought to introduce excerpts from the other authors' books and various newspaper articles into evidence, the Plaintiff objected on the grounds of relevance. The court sustained the objection, but based the exclusion on lack of foundation. Establishing foundation is the process whereby a proponent of a piece of evidence identifies or authenticates the evidence, usually with the testimony of a witness. *See* Edward W. Cleary, *McCormick on Evidence* § 51, at 123 (3d ed. 1984). Here, the authenticity of the books and articles had been stipulated in the pretrial order. The evidentiary foundation for these documents was thus established. Consequently, the district court erred by excluding the evidence for lack of foundation.

■■■ The district court was correct, however, in sustaining the Plaintiff's objec-

tion. Defendants failed to connect the books and the newspaper articles to Mrs. Sheets diary. *See* Fed.R.Evid. 402. Hence, they did not establish the evidence's relevance nor a basis for its admission. Therefore, the court's only error was basing the exclusion on lack of foundation, instead of relevance. We may affirm the district court's evidentiary ruling, despite the fact its conclusion was based on incorrect grounds. *See In re Slack–Horner Foundries Co.,* 971 F.2d 577, 579–80 (10th Cir.1992) (" '[T]rial court's decision will be affirmed if the record reveals another ground which supports the decision.' ") (quoting *Scivally v. Time Ins. Co.,* 724 F.2d 101, 103 (10th Cir.1983)). Because we find grounds to support the district court's exclusion of this evidence, we affirm its evidentiary ruling.

### IV. Remittitur

■■■ Defendants claim that the trial court erred by failing to grant their motion for remittitur. The trial court's denial of a motion for remittitur is entitled to considerable deference on appeal. We will not disturb this determination absent a gross abuse of discretion. *Karns v. Emerson Elec. Co.,* 817 F.2d 1452, 1460 (10th Cir.1987). We will only find an abuse of discretion if the jury award is " 'so excessive ... as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or another improper cause invaded the trial....' " *Id.* (quoting *Barnes v. Smith,* 305 F.2d 226, 228 (10th Cir.1962)). Because determination of damages is traditionally a jury function, *Whiteley v. OKC Corp.,* 719 F.2d 1051, 1058 (10th Cir.1983), and the jury's award of $650,000 does not shock our conscience, we affirm the trial court's denial of remittitur.

### V. New Trial

■■■ Defendants claim that the district court erred by denying their motion for new trial. We review the district court's denial of defendants' motion for new trial for abuse of discretion. *Hinds v. General Motors Corp.,* 988 F.2d 1039, 1046 (10th Cir.1993). We will reverse the denial of a motion for a new trial only if the trial court "made a clear error of

judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* Defendants have wholly failed to establish any bases for a new trial. Hence, we affirm the district court's denial of defendants' motion for new trial.

### VI. Attorney's Fees

 Defendants claim that the district court's award of attorney's fees was unreasonable. We review the district court's award of attorney's fees to the plaintiff for abuse of discretion. *Post Office v. Portec, Inc.,* 913 F.2d 802, 811 (10th Cir.1990). We will find the underlying factual findings reversible only if they are clearly erroneous. *See* Fed.R.Civ.P. 52(a); *Supre v. Ricketts,* 792 F.2d 958, 961 (10th Cir.1986).

Plaintiff has the burden of proving in the first instance the extent and reasonableness of requested attorney's fees with meticulous and contemporaneous time records. *See Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1210 (10th Cir.1986). This was done, and the district court made the adjustments it deemed appropriate. Indeed, having seen the work of these attorneys, the district court is in a unique position to determine an appropriate fee. This is especially true in the absence of any evidence to the contrary. Defendants failed to proffer any evidence that the rates or hours claimed by Mr. Sheets' attorneys or the court's adjustments were unreasonable. Defendants simply argue that the fees were duplicative and exorbitant in nature. Because Defendants have failed to substantiate these allegations with evidence or otherwise, they waived their right to an evidentiary hearing and consequently may not now challenge the district court's determination that the number of hours expended were reasonable. *See Blum v. Stenson,* 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5, 79 L.Ed.2d 891 (1984).

Defendants also claim that the district court abused its discretion by halving the amount Plaintiff's counsel charged, since this total included time spent on the case not directly involving Mr. George and Salt Lake County. We find, however, the court's determination to be reasonable. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct.

1933, 1940, 76 L.Ed.2d 40 (1983). Hence, we affirm the district court's award of $77,896.33 in attorney's fees.

### AFFIRMED.