61 F.3d 915
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Patrick M. DOOLEY, Guardian of the property of David
Albiter-Ocampo, a minor, Plaintiff-Appellant, and
Ma Oralia Ocampo, individually, Plaintiff,
v.
ALTUS MEDICAL CORP., a domestic corporation; Noble l.
Ballard, M.D., Inc., a professional corporation, Noble L.
Ballard, M.D., an individual; and Randall E. Sheets, an
individual, Defendants-Appellees.
Patrick M. DOOLEY, duly appointed legal guardian of the
property of David Albiter-Ocampo, a minor; Ma
Oralia Ocampo, individually; Sixto L.
Ocampo, Plaintiffs-Appellants,
v.
ALTUS MEDICAL CORP., a domestic corporation; Noble L.
Ballard, M.D., Inc., a professional corporation;
Noble L. Ballard, M.D., an individual;
Randall E. Sheets, an individual,
Defendants-Appellees.
 Nos. 94-6213, 95-6035.
 United States Court of Appeals, Tenth Circuit.
 May 31, 1995.
 
 Before ANDERSON, BARRETT, and BALDOCK, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 These consolidated appeals both arise out of a medical malpractice action filed by plaintiff/appellant Patrick M. Dooley, guardian for David Ocampo, a minor, against a medical clinic, a doctor who practiced there, and the doctor's professional corporation ("defendants").
 
 No. 94-6213
 
 2
 In appeal No. 94-6213, Mr. Dooley, as David Ocampo's guardian, appeals from the denial of his motion for a new trial and for a hearing to explore alleged misconduct of defense counsel, following a jury verdict for defendants on plaintiff's claim that defendant Dr. Noble L. Ballard caused permanent injuries to David Ocampo's left arm at David's birth. We affirm.
 
 BACKGROUND
 
 3
 David Ocampo was born on October 2, 1990, at the Jackson County Memorial Hospital in Altus, Oklahoma, with a limp and flaccid left arm, as a result of damage to the brachial plexus nerves near the spinal column. During his delivery, David experienced shoulder dystocia, a condition in which his left shoulder became jammed against his mother's pubic bone, thereby impeding his birth. This situation requires prompt action to relieve the dystocia and permit complete delivery of the baby, or the baby's and the mother's health may be jeopardized. Plaintiff contends that defendant Dr. Ballard, David's delivering physician, used excessive traction in attempting to relieve the dystocia, thereby avulsing, or tearing away, nerves on the brachial plexus, and causing the damage to his left arm. While not denying that the damage occurred, Dr. Ballard denies that he caused it.
 
 
 4
 When David was 16 months old, Dr. John Laurent, a neurosurgeon in Houston, Texas, evaluated and operated on David's damaged brachial plexus nerves. He was unable to perform nerve grafts, however, and David continues to have a significant impairment of his left arm.
 
 
 5
 Plaintiff brought this medical malpractice action against Dr. Ballard, Dr. Ballard's professional corporation, Noble L. Ballard, M.D., Inc., and against Altus Medical Corporation, Dr. Ballard's clinic, of which he is a shareholder and employee.[2]
 
 
 6
 This case involves alleged discovery violations by defense counsel. The claimed violations relate to a drawing and letter prepared by Dr. Laurent following his surgery on David. Prior to the surgery, a CT scan apparently indicated there were three nerve avulsions. During the surgery, Dr. Laurent drew a picture of David's condition, which indicated there was one avulsion, not three. The written note concerning the operation, dictated apparently by an assistant, indicates three avulsions.
 
 
 7
 Following surgery, Dr. Laurent customarily prepares another drawing of a patient. He uses a sheet of paper with two preprinted drawings of the brachial plexus nerves, and he modifies the two drawings to show the condition of the particular patient before and after the surgery. If he does only exploratory surgery, as he did in David's case, he only draws the "before surgery" drawing on the left. In his drawing of David's condition, he indicated three avulsions.
 
 
 8
 On May 11, 1992, Dr. Laurent sent to Dr. Ballard a letter concerning his treatment of David, along with the second, post-operative drawing showing three avulsions. Although there is apparently no dispute that the letter arrived at Altus Medical Corporation, Dr. Ballard never saw it. When an Altus employee tried to file the letter in David's medical chart, the chart was unavailable because it was being copied, pursuant to a request by an attorney for the Ocampos. The letter was therefore placed in a "holding" file, and was never placed in David's medical chart at Altus.
 
 
 9
 In October of 1993, after this medical malpractice action was filed, one of the defendants' attorneys in this case, S. Randall Sullivan, met with plaintiffs' attorneys at Altus for depositions. The attorneys for the Ocampos had asked Mr. Sullivan to look for any other medical records relating to David, and Mr. Sullivan had asked an Altus employee, Debbie Magoon, to get them. She delivered to Mr. Sullivan two envelopes of original records, which he took back to his office in Oklahoma City. Among the items in the envelopes was Dr. Laurent's May 11, 1992, letter with the attached three avulsion drawing. Pursuant to several discovery requests, plaintiffs' counsel eventually received all medical records from Dr. Ballard, from Houston and from Dr. Laurent, except for the May 11, 1992, letter.
 
 
 10
 At Dr. Laurent's video deposition, Dr. Laurent was questioned by plaintiff's counsel about his first drawing, which showed one avulsion. Dr. Laurent indicated that there was a second, later, drawing, but that it would be the same as the first drawing. On cross-examination, defense counsel relied upon the first, one-avulsion, drawing to elicit from Dr. Laurent that David's injuries were not as serious as many others Dr. Laurent had seen.
 
 
 11
 On March 23, 1994, five days before the trial was scheduled to start, following another request for medical records by plaintiff's counsel, Mr. Sullivan had the contents of the two envelopes he had received from Ms. Magoon photocopied and delivered to plaintiffs' counsel. The May 11 letter and drawing showing three avulsions surfaced for the first time.
 
 
 12
 Plaintiffs did not seek a continuance of the trial. Instead, they filed a pretrial motion in limine to strike that portion of Dr. Laurent's video deposition showing defendants' cross-examination of Dr. Laurent, on the ground that the three-avulsion drawing was not available to them at the time of the deposition. After a hearing, the court denied the motion, as well as plaintiff's subsequent motion during trial to strike that same portion of the deposition. The court ruled that the entire video deposition could be shown to the jury, but permitted plaintiff to make whatever use he wished of the May 11 letter and drawing. The jury was told by stipulation the date the letter was given to plaintiff's counsel.
 
 
 13
 Plaintiff also attempted to add Ms. Magoon to his witness list, to show how long the May 11 letter had been in defense counsel's hands prior to its disclosure. The court denied this request, stating as follows:
 
 
 14
 All I want to do, I'll let you make whatever issue you want to make of it, but right now I'm not going to let you call the witness, because I don't--on what I've heard, I don't see it would be helpful one way or the other. The fact you didn't get it, you can make whatever you want to of it and you can explain it.
 
 
 15
 Tr. of Hr'g at 22, Appellant's App. at 309. The court also denied plaintiff's requested jury instruction concerning spoliation of the evidence.[3] The trial resulted in a jury verdict for defendants.
 
 
 16
 Plaintiff then filed a motion for a new trial and for a hearing to determine counsel's misconduct. The district court denied both motions, making the following findings:
 
 
 17
 [T]he Court was and is satisfied that defense counsel was not aware of the existence of any second diagram by Dr. Laurent until Dr. Laurent's deposition on January 20, 1994 and that defense counsel never saw such second diagram and did not know that it differed from the drawing in the sets of Houston medical records previously obtained until March 24, 1994 ... that Defendants' counsel may have been or were negligent in failing to have copies made of the records in the two envelopes delivered in October of 1993 and delivered to Plaintiff ... but that defense counsel did not intentionally or knowingly fail to disclose or conceal the second diagram.
 
 
 18
 Order at 4-5, Appellant's App. at 95-96. The court further found that plaintiff suffered no prejudice from the late disclosure, and, even if he had suffered some prejudice, it was curable by requesting a continuance, which plaintiff did not do. With respect to the allegation of error in failing to give the requested spoliation instruction, the court acknowledged that federal courts permit instructions concerning the inference to be drawn from the unexplained failure or refusal to produce evidence. It observed, however, that "in this case the documents in question were produced and admitted into evidence." Order at 13, Appellant's App. at 104.
 
 
 19
 Plaintiff appeals the district court decision, arguing that the district court abused its discretion in failing to grant him the relief he sought for the defendants' late disclosure of the May 11 letter and drawing. He argues the district court misinterpreted and misapplied recently amended Fed.R.Civ.P. 37(c) concerning discovery, while defendants argue Rule 37(c) is inapplicable, because it only applies to violations of Rule 26 and Rule 26 has either been supplanted by local rules or is irrelevant to the claimed discovery violation in this case.
 
 DISCUSSION
 
 20
 We review the district court's denial of a motion for a new trial for abuse of discretion. Sheets v. Salt Lake County, 45 F.3d 1383, 1390 (10th Cir.1995). We reverse the denial of a motion for a new trial "only if the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.' " Id. at 1390-91 (quoting Hinds v. General Motors Corp., 988 F.2d 1039, 1046 (10th Cir.1993)). That standard therefore requires us to review, in turn, the propriety of the district court's treatment of the late disclosure of the May 11 letter and drawing.
 
 
 21
 Whether we characterize this as a review of the district court's application of Rule 37, or its application of local rules pertaining to discovery, or of its inherent power to manage its courtroom and the conduct of cases before it, our standard of review is the same: we review for an abuse of discretion. See Orjias v. Stevenson, 31 F.3d 995, 1005 (10th Cir.) ("The imposition of sanctions for abuse of discovery under Fed. R. Civ. Pro. 37 is a matter within the discretion of the trial court."), cert. denied, 115 S.Ct. 511 (1994); cf. Chambers v. Nasco, Inc., 501 U.S. 32, 55 (1991) ("We review a court's imposition of sanctions under its inherent power for abuse of discretion."); Banghart v. Origoverken, A.B., 49 F.2d 1302, 1304 (8th Cir.1995) ("It is the district court's responsibility to enforce its rules, and absent unusual circumstances not now before us, the district court's failure to do so does not furnish us with a basis for concluding that the district court abused its discretion."). Appellate courts have repeatedly recognized the wide latitude afforded district courts in the management of discovery. See Cleveland v. Piper Aircraft Corp., 985 F.2d 1438, 1449 (10th Cir.) (recognizing "broad discretionary authority" over such matters as discovery), cert. denied, 114 S.Ct. 291 (1993); see also Poulin v. Greer, 18 F.3d 979, 984 (1st Cir.1994) (recognizing that "the district court possesses a wide latitude in formulating the appropriate sanction, if any, for a discovery violation").
 
 
 22
 We review de novo the district court's failure to give a tendered jury instruction. See Watson v. Blankinship, 20 F.3d 383, 392 (10th Cir.1994). "An error results in a reversal of a judgment only if the error is determined to have been prejudicial, based on a review of the record as a whole.' " Id. (quoting Street v. Parham, 929 F.2d 537, 539-40 (10th Cir.1991)).
 
 
 23
 In this case, having carefully reviewed the record and the district court's opinion, we are convinced the court did not abuse its discretion in its handling of the late disclosure of the May 11 letter and drawing. Nor did the court commit error in failing to tender plaintiff's requested instruction concerning spoliation of the evidence. We therefore AFFIRM the district court's denial of plaintiff's motion for a new trial and for an evidentiary hearing, for substantially the reasons set forth in that court's opinion.
 
 No. 95-6035
 
 24
 In appeal No. 95-6035, plaintiff appeals from the district court's grant of summary judgment to the same defendants, with the addition of Dr. Randall E. Sheets and Altus Medical & Surgical Clinic, Inc., both of which were initially named defendants in the medical malpractice action. This second action sought damages for an alleged breach of defendants' duty to provide copies of medical records and for fraud and deceit in withholding those records.
 
 
 25
 The district court granted defendants' motion for summary judgment on the ground of res judicata and collateral estoppel, finding that the entire cause of action was barred by res judicata or claim preclusion or, alternatively, that issue preclusion operated to "preclude Plaintiffs from relitigating the issue of whether they sustained any prejudice or detriment as a result of the alleged alteration of medical records and late disclosure of the [medical record]." Order at 9, Appellants' App. Vol. II at 734.
 
 
 26
 We review de novo the grant of summary judgment, applying the same standard as the district court. Ball v. Renner, No. 94-8064 1995 WL 289656 at * 1 (10th Cir. May 10, 1995); Perlmutter v. United States Gypsum Co., No. 94-1187 1995 WL 271960 at * 2 (10th Cir. May 9, 1995).
 
 
 27
 We AFFIRM the district court's order for substantially the reasons set forth in its carefully written opinion. We add the following observations. Plaintiff's complaint in this second action seeks damages for the late disclosure of medical records in plaintiff's medical malpractice action. Plaintiff alleges that incomplete medical records were turned over "so that plaintiffs would be prejudiced in evaluating, assessing, preparing and presenting their medical negligence suit against defendants." Compl. p 7, Appellants' App. Vol. I at 3. Plaintiff further alleges that
 
 
 28
 [a]s a direct and proximate result of defendants' withholding of copies of medical records plaintiffs were caused to incur attorney's fees, expenses and costs associated with preparing for trial on behalf of plaintiff David Ocampo which time was rendered ineffectual because of the inability to consider all of the evidence to which plaintiffs were entitled. Additionally plaintiffs were caused to lose their jury trial against defendants Dr. Ballard and the Clinic because of their inability to adequately prepare without the concealed records thereby causing plaintiffs to be damaged.
 
 
 29
 Id. p 12, Appellants' App. Vol. I at 4. It is clear that plaintiff's claimed injury resulted from the late disclosure of the documents, and the consequent damage to the presentation of his medical malpractice action. However, as everyone acknowledges, the documents were in fact produced, albeit belatedly. While plaintiff complains now that he suffered irreparable prejudice from the late disclosure, he made no effort at the time to remedy any such prejudice by seeking a continuance. Further, while plaintiff argues now that he was never given the opportunity to fully and fairly litigate his spoliation claim, because the jury was never instructed on spoliation, he confuses opportunity to litigate with decision on the merits. The district court determined that an instruction on spoliation was not warranted in this case; the fact that the court so held against plaintiff does not mean that plaintiff was denied the opportunity to present the claim.
 
 
 30
 In short, plaintiff attempts to have two bites at the apple. We affirm the district court's conclusion that he may not.
 
 
 31
 For the foregoing reasons, the district court's orders in these consolidated appeals are AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Originally, David's parents, Sixto L. Ocampo and Ma Oralia Ocampo, were also named plaintiffs in this action. Additionally, Dr. Randall E. Sheets and Altus Medical & Surgical Clinic were initially named defendants. Approximately a month before the trial began, all plaintiffs stipulated to the dismissal with prejudice of their action against Dr. Sheets and Altus. Immediately before the trial, and again following its commencement, plaintiffs Sixto and Ma Oralia Ocampo dismissed their claims with prejudice against all remaining defendants
 
 
 [3]
 The Third Circuit has recently described the spoliation doctrine as follows:
 Since the early 17th century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. Such evidence permitted an inference, the "spoliation inference," that the destroyed evidence would have been unfavorable to the position of the offending party. As then-Judge Breyer put it in Nation-wide Check Corp. v. Forest Hills Distributors, Inc., 692 F.2d 214 (1st Cir.1982), "the evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [a document] is relevant to litigation and who proceeds to destroy [the document] is more likely to have been threatened by [the document] than is a party in the same position who does not destroy the document." Id. at 218; see Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d. Cir.1994).