**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 3 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TRUSTEES OF THE COLORADO
TILE, MARBLE & TERRAZZO
WORKERS PENSION FUND;
LOCAL 6 TRUSTEES COLORADO
TILE LAYERS, MARBLE MASONS,
AND TERRAZZO WORKERS
VACATION TRUST FUND;
TRUSTEES INTERNATIONAL
UNION OF BRICKLAYERS AND
ALLIED CRAFTSMEN HEALTH
FUND; TRUSTEES OF THE
INTERNATIONAL TROWEL
TRADES PENSION PLAN;
COLORADO TILE, MARBLE &
TERRAZZO CONTRACTORS
ASSOCIATION,

        Plaintiffs-Appellees,

v.

WILKINSON & COMPANY, INC.,
a New Jersey corporation,

        Defendant-Appellant.

Nos. 96-1205
&
96-1431
(D.C. No. 94-Z-367)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **KELLY** and **HENRY**, Circuit Judges, and **DOWNES**,[**] District Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument.

Plaintiffs, trustees of four union trust funds and the Colorado Tile, Marble & Terrazzo Contractors Association, brought this action seeking fringe benefit contributions and other damages under collective bargaining agreements allegedly applicable to defendant Wilkinson & Company, Inc.'s marble work at the Denver International Airport. On cross-motions for summary judgment, the district court granted partial summary judgment in plaintiffs' favor and denied Wilkinson's motion. Following an evidentiary hearing, the court entered judgment against Wilkinson for $197,098.76. Wilkinson appeals this judgment (No. 96-1205). The court subsequently granted plaintiffs' application for attorney fees and costs totaling $63,040.36. Wilkinson also appeals this ruling (No. 96-1431). We affirm the court's judgment with respect to the plaintiff trustees, but reverse and

[**]    The Honorable William F. Downes, District Judge, United States District Court for the District of Wyoming, sitting by designation.

-2-

remand for further proceedings with respect to the plaintiff Contractors Association.

## I.  BACKGROUND

This case essentially revolves around whether Wilkinson, a New Jersey corporation, was required to use union labor on work it performed under subcontract at the Denver International Airport in Colorado.  Wilkinson is a signatory to a collective bargaining agreement between the Tile Contractors Association of Northern New Jersey, Inc., and Local No. 77 of New Jersey-Bricklayers and Allied Craftsmen (the "Local 77 CBA").  That agreement, which generally covers workers known as "helpers" or "finishers," provides in section 6 of its conditions of employment that

> (a)  It shall be the work of the Helper to perform, without limitation, any and all work required to be performed, relating to the installation of tile, marble, granite, brick pavers and other related materials, so as to produce a complete job, and perform such work connected with the contract as may be directed by the Foreman or Employer . . . .
>
> (b)  . . .  Regardless of number, Helpers shall handle all types of panels and prefab tile units.

Appellant's App. Vol. II at 339.

The Local 77 CBA also contains what is designated as a "traveling contractors" clause that provides as follows:

> When the Employer has any work specified in this Agreement to be performed outside of the area covered by this Agreement and within

the area covered by an Agreement with another affiliate of the International Union of Bricklayers and Allied Craftsmen, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the job site area. Employees covered by this Agreement who are sent to projects outside the area covered by this Agreement shall be paid at least the established minimum wage scale specified in this Agreement but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed plus all contributions specified in the job site local Agreement. The Employer shall in all other matters be governed by the provisions established in the job site local Agreement. If employees are sent back to work on a project in an area where there is no local Agreement covering the work specified in this Agreement, the full terms and conditions of this Agreement shall apply.

Id. at 350-51.

Wilkinson entered into a subcontract with the PCL Construction Services, Inc.-Harbert Construction Company joint venture, general contractor for the City and County of Denver, for interior marble work at the Denver International Airport terminal. It in turn subcontracted the work to All States Stone Systems, Inc., a nonunion firm. (David A. Wilkinson, Sr. owns both Wilkinson & Company and All States.) All States performed the work on the airport project between January 1993 and March 1994. All States paid its workers the full prevailing wages required by law and contract and made cash lump sum payments to its workers in lieu of fringe benefits. It did not make any fringe benefit or other contributions for its workers to plaintiffs.

-4-

Plaintiff trustees are the named fiduciaries of four multiemployer welfare and pension benefit plans as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"). They base their claims against Wilkinson on Section 515 of ERISA, 29 U.S.C. § 1145. Plaintiff Contractors Association is a Colorado nonprofit corporation that promotes the tile, marble and terrazzo trade in Colorado. It alleged jurisdiction under 28 U.S.C. § 1367, but the record does not indicate the basis for its claim, though we assume it is asserting a third-party beneficiary claim.

Plaintiffs claim that the work Wilkinson performed through All States at the airport project was the type of work covered by the Local 77 CBA, and that pursuant to the Local 77 CBA traveling contractors clause, Wilkinson was obligated to comply with the union affiliate's agreement covering the airport project site. That local agreement is one involving Local Union No. 6 of Colorado, International Union of Bricklayers and Allied Craftsmen (the "Colorado CBA"). That agreement, which covers workers in addition to helpers, provides in part that "[t]he employer shall not subcontract any work covered by the agreement and to be done at the site of the construction, alteration, or repair of any building, structure or other work to any other employer who is not a signatory party to this contract." Appellees' App. Vol. I at 26 (capitalization deleted). The Colorado CBA also requires employers to make contributions to

-5-

plaintiffs based on the number of hours worked by covered workers. See Appellant's App. Vol. I at 45-46, 55. Plaintiffs contend that Wilkinson breached the Colorado CBA by subcontracting the work to All States, who was not a signatory party to the Colorado CBA, and by not making the required contributions. As damages, plaintiffs claimed the amounts due as contributions, interest and liquidated damages under the Colorado CBA and various trust fund agreements incorporated into that agreement for all workers the agreement covered.

Wilkinson contended that as construed by it and the New Jersey local, the Local 77 CBA would not cover the type of work performed at the airport project. It also contended that even if the Local 77 CBA did cover the airport project, it was liable only for contributions for the type of workers the agreement covered, namely, helpers. Both sides moved for summary judgment.

In an oral order, the district court agreed with plaintiffs that under the plain language of the Local 77 CBA, the airport project was the type of work covered by the agreement, and it therefore granted partial summary judgment to plaintiffs. Prior to a hearing on damages, the court in another oral order ruled as a matter of law that the Colorado CBA controlled the amount of damages, and Wilkinson was therefore obligated to make contributions for all workers covered by that agreement. It therefore entered judgment in plaintiffs' favor in the amount of

$197,098.76[1] plus attorney fees and costs.  The court subsequently granted, over Wilkinson's objections, plaintiffs' application for attorney fees and costs and awarded plaintiffs $60,887.15 in fees and $2,153.21 in costs.

## II.  DISCUSSION

We review a district court's grant of summary judgment and its legal conclusions de novo, see Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (summary judgment); EEOC v. Wiltel, Inc., 81 F.3d 1508, 1513 (10th Cir. 1996) (legal conclusions), and review its factual findings for clear error, see Hockett v. Sun Co., 109 F.3d 1515, 1525-26 (10th Cir. 1997).  On appeal, Wilkinson essentially raises two issues challenging the merits of plaintiffs' claims:  (1) the district court incorrectly determined that the Local 77 CBA covered the type of work performed at the airport project; and (2) in any event, because the Local 77 CBA covered only helpers, the district court erred in ruling that Wilkinson owed contributions for workers other than helpers.  Both of these issues are at root contract interpretation matters.  Contract interpretations present questions of law subject to de novo review.  See Volkman v. United Transp. Union, 73 F.3d 1047, 1050 (10th Cir. 1996); Linton v. United Parcel Serv., 15 F.3d 1365, 1370 (6th Cir.

---

[1]      The total damages award is comprised of $128,010.22 for contributions, $50,095.37 for interest, and $18,993.17 for liquidated damages.

1994); <u>Sheet Metal Workers, Local 19 v. 2300 Group, Inc.</u>, 949 F.2d 1274, 1278-79 (3d Cir. 1991).

## A. Liability

Wilkinson argues that the Local 77 CBA is ambiguous regarding the type of work covered. However, it does not identify what specific language is ambiguous, and as discussed later, we do not see how it can be seriously argued that the agreement itself is ambiguous as to type of work covered. What Wilkinson really seems to be arguing is that it and Local 77 had some type of special understanding of what the agreement covered or that through their course of dealing, they modified the agreement.

Wilkinson contends that the airport project involved interior work that required "the setting of dimensional 3/4" thick marble on vertical surfaces." Appellant's Br. at 5. Though Wilkinson almost concedes that this work appears to be covered by the broad language of the Local 77 CBA,[2] it claims that had this work been performed in the home territory covered by the Local 77 CBA, it would not have been performed by Local 77 workers. Instead, the work would have come within the jurisdiction of two other locals. In support of this

---

[2]    The affidavit of its vice-president, John LoBiondo, stated that "the work of the helpers employed in the setting of dimensional 3/4" thick marble on vertical surfaces, <u>while it may appear to be covered under Local 77</u>, it is, in fact, the work of Compact Labor Club of Marble Workers, Riggers, Crane and Derrickman Local No. 20 in New York City." Appellant's App. Vol. I at 110-11 (emphasis added).

contention, Wilkinson submitted the affidavits of its vice-president and three Local 77 members and its agreements with the other two locals, and it contends that the district court's refusal to consider this evidence was improper. It further contends that because plaintiffs did not legitimately dispute this evidence, the district court should have entered summary judgment in its favor, or at a minimum, determined that there were factual disputes precluding summary judgment against it.

We agree with the district court that the Local 77 CBA on its face clearly and unambiguously covers the airport project work. See Volkman, 73 F.3d at 1050 ("If the language of the agreement is unambiguous, it may be construed as a matter of law without resort to extrinsic evidence."). As noted earlier, the agreement covers "without limitation, any and all work required to be performed, relating to the installation of . . . marble." Appellant's App. Vol. II at 339. There is no exclusion or exception for interior or dimensional or three-quarter inch or vertically installed marble.

Wilkinson cites several Third Circuit cases indicating that a court should consider extrinsic evidence in determining whether a collective bargaining agreement is ambiguous. See, e.g., International Union, United Auto., Aerospace & Agric. Implement Workers v. Mack Trucks, Inc., 917 F.2d 107, 111 (3d Cir. 1990) ("In making the ambiguity determination, a court must consider the words

of the agreement, alternative meanings suggested by counsel, and extrinsic evidence offered in support of those meanings.") (quotation omitted).  However, even where extrinsic evidence is considered, the ultimate inquiry is whether "from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings."  Id. (quotation omitted); see also Independent Constr. Equip. Builders Union v. Hyster-Yale Materials Handling, Inc., 83 F.3d 930, 933 (7th Cir. 1996) (collective bargaining agreement is "unambiguous if it is susceptible to only one reasonable interpretation").  Thus, even if we considered Wilkinson's evidence, we simply could not conclude that the phrase, "without limitation, any and all work . . . relating to the installation of . . . marble" is reasonably susceptible of Wilkinson's claim that it really means "excluding interior, vertical, dimensional, 3/4" marble."

Though Wilkinson's evidence cannot show ambiguity in the scope of work covered by the Local 77 CBA, it may show that the written agreement was modified through course of dealing.  See Matuszak v. Torrington Co., 927 F.2d 320, 324 (7th Cir. 1991); Muniz v. United States, 972 F.2d 1304, 1320 (Fed. Cir. 1992).  However, the potential effect of an unwritten modification of the agreement through course of dealing appears to vary depending on who the

plaintiff is; that is, whether we are talking about the trustees or the Contractors Association.[3]

### 1. Trustees

Trustees brought this action pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, which states that

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

"Section 515 'creates a federal right of action independent of the contract on which the duty to contribute is based.'" Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1021 (4th Cir. 1997)

---

[3] In its brief oral order regarding liability, the district court essentially refused to consider Wilkinson's extrinsic evidence that the Local 77 CBA was interpreted differently by the parties to the agreement, stating "it is not clear to me why they choose to do it the way they do it in New Jersey when the language in the Local 77 agreement is crystal clear." Appellant's App. Vol. II at 212. Unfortunately, in its order the district court did not state its legal reasons for not considering Wilkinson's evidence. (Indeed, the court did not cite any legal authority in its ruling.) Additionally, neither the court nor the parties have distinguished between the claims asserted by the trustees under ERISA and the claim asserted by the Contractors Association apparently under a third-party beneficiary theory. Yet, despite the district court's failure to fully explain the reasons behind its decision, we may affirm its decision on any grounds for which there is a record sufficient to permit conclusions of law. See Medina v. City & County of Denver, 960 F.2d 1493, 1495 n.1 (10th Cir. 1992).

(quoting Bituminous Coal Operators' Ass'n, Inc. v. Connors, 867 F.2d 625, 633 (D.C. Cir. 1989)).

Congress added § 515 to ERISA in 1980 to "simplify actions to collect delinquent contributions, avoid costly litigation, and enhance the actuarial planning necessary to the administration of multiemployer pension plans." Central States, S.E. & S.W. Areas Pension Fund v. Independent Fruit & Produce Co., 919 F.2d 1343, 1348 (8th Cir. 1990); see generally Central Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1102-03 (3d Cir. 1996); Central States, S.E. & S.W. Areas Pension Fund v. Gerber Truck Serv., Inc., 870 F.2d 1148, 1151-54 (7th Cir. 1989) (en banc).  Though this circuit has not yet had cause to interpret and apply § 515, we agree with all of the circuits who have, that it makes it easier for multiemployer plans to collect delinquent contributions and limits the defenses available to employers.[4]

> Section 515 strengthens the position of multiemployer plans by holding employers and unions to the literal terms of their written commitments.  Because an employer's obligation to a multiemployer fund is determined by the plain meaning of the language used in the collective bargaining agreement, the actual intent of the contracting parties (i.e., the employer and the local union) is immaterial when the meaning of that language is clear.

---

[4]    In Trustees of the Colorado Statewide Iron Workers (Erector) Joint Apprenticeship & Training Trust Fund v. A & P Steel, Inc., 812 F.2d 1518, 1522 n.3 (10th Cir. 1987), we found it unnecessary to address the scope of defenses available to an employer under § 515.

Ralph's Grocery, 118 F.3d at 1021. Section 515 thus places a pension or welfare fund in a special position in relation to the collective bargaining agreement, "like a holder in due course in commercial law, or like the receiver of a failed bank--entitled to enforce the writing without regard to understandings or defenses applicable to the original parties." Gerber Truck, 870 F.2d at 1149 (citations omitted); see also Independent Fruit & Produce, 919 F.2d at 1349 ("'If it means nothing else, section 515 means that . . . suit [by a trustee] cannot be thwarted by defenses not apparent from the face of the Agreement.'") (quoting Bituminous Coal Operators, 867 F.2d at 634). The circuits thus generally recognize only two defenses to a collection action: the pension contributions themselves are illegal or the collective bargaining agreement is void and not merely voidable.[5] See id.; see also Agathos v. Starlite Motel, 977 F.2d 1500, 1505-06 (3d Cir. 1992) (rejecting employer's defenses based on fraud-in-the-inducement, economic duress, and lack of majority support); Independent Fruit & Produce, 919 F.2d at 1352-53 (rejecting employer's defense based on its and union's understanding of term where understanding differed from term's plain meaning); Bituminous Coal

_____

[5] The Third Circuit has also recognized a third defense where the employees have decertified the union as their bargaining representative and prospectively voided the union's collective bargaining agreement. See McCormick Dray Line, 85 F.3d at 1105-06.

Operators, 867 F.2d at 632-36 (rejecting employer's defenses based on unilateral and mutual mistakes of fact in entering collective bargaining agreement).

As we stated above, this is not a situation in which the collective bargaining agreement itself is ambiguous, in which case consideration of extrinsic evidence might be appropriate in construction of the agreement. See Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 136-37 (3d Cir. 1993). Thus, the district court correctly ruled that because the Local 77 CBA is not ambiguous, any unwritten modification of the agreement by Wilkinson and Local 77 to limit the coverage of the Local 77 CBA and the extrinsic evidence demonstrating that modification are irrelevant to plaintiffs' § 515 claim. See Central States, S.E. & S.W. Areas Pension Fund v. Joe McClelland, Inc., 23 F.3d 1256, 1259 (7th Cir. 1994) ("[E]xtrinsic evidence may not be used to create an ambiguity in a pension or welfare agreement subject to ERISA."); Gerber Truck, 870 F.2d at 1153-56 (rejecting employer's defense based on oral agreement with union not to enforce terms of collective bargaining agreement). Thus, to the extent that § 515 applies to this case, the airport work was the type of work covered by the Local 77 CBA.

Wilkinson tries to distinguish cases applying § 515 such as Independent Fruit & Produce by contending that they "do[] not address the issue of the applicability of a traveling [contractors] clause where no obligation arose in the

-14-

home territory." Appellant's Reply Br. at 3. We agree that they do not, but do not think that is a relevant distinction. In the ordinary § 515 case, the plans seeking the contributions are the ones named in the collective bargaining agreement or otherwise have a more direct relationship with the employer. Here, the trustees' § 515 claim arises through operation of the traveling contractors clause. The type of work Wilkinson performed in Colorado triggered the clause, thus requiring Wilkinson to comply with the terms of the Colorado CBA, which in turn required the payment of contributions to the trustees. Had Wilkinson performed the same work in Local 77's home territory, it could have been subject to a § 515 claim.[6] Wilkinson does not challenge the enforceability of the traveling contractors clause per se,[7] nor does it argue that the trustees here should be distinguished for any reason from the typical § 515 plaintiff.[8] Under these

---

[6] The Local 77 CBA requires Wilkinson to make various welfare and pension fund contributions to Local 77 funds and the Bricklayers and Trowel Trades International Pension Fund. See Appellant's App. Vol. II at 342-45.

[7] We note that courts have found them valid. See, e.g., Local Union No. 36, Sheet Metal Workers' Int'l Ass'n v. Atlas Air Conditioning Co., 926 F.2d 770, 772-73 (8th Cir. 1991); McKinstry Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 16, 859 F.2d 1382, 1385-87 (9th Cir. 1988).

[8] Wilkinson's vice-president essentially acknowledged the clause's applicability when he stated in his affidavit that "if the Local 77 agreement to which Wilkinson is a party, is applicable because of the scope of work to the Colorado job site, then under the terms of the so called Travelers Clause § XV of the Local 77 agreement, Wilkinson is thereby bound by the Colorado Unions Agreement Local 6 and everything that follows with being bound by that

(continued...)

circumstances, we see no reason why the clause should not be enforced to support the trustees' § 515 claim. We conclude therefore that the district court correctly determined that Wilkinson was liable for contributions to the trustees.

## 2. Contractors Association

There is little in the record relevant to the basis for the Contractors Association's claim for contributions, but it is clear from plaintiffs' complaint that it is not based on § 515, since they asserted jurisdiction over the claim under 28 U.S.C. § 1367. Apparently, the Contractors Association claims to be a third-party beneficiary under the Colorado CBA, which requires contributions to the Association for each hour worked by covered employees. See Appellant's App. Vol. I at 45-46. Wilkinson's obligation to the Contractors Association as a third-party beneficiary would appear to be based on the intent of the parties to the Local 77 CBA, through the traveling contractors clause, and may well be subject to any subsequent modifications by the parties. See, e.g., Restatement (Second) of Contracts §§ 309, 311. Thus, Wilkinson's extrinsic evidence of the parties' course of dealing may be relevant to the Contractors Association's claim. Beyond that, we can say little more because the record is so undeveloped on this issue.

_____

[8](...continued)
agreement." Appellant's App. Vol. I at 111-12 (sic generally).

We therefore must vacate the district court's judgment as it applies to the claim of the Contractors Association, and remand the matter for further consideration.

B. Damages

Wilkinson's second argument on the merits goes to the amount of damages. It contends that even if we agree with the district court that the type of work performed at the airport project was covered by the Local 77 CBA, it should not be required to make contributions for workers other than helpers because the Local 77 CBA applied only to helpers. It claims that the reciprocal obligation under the traveling contractors clause to comply with a foreign collective bargaining agreement arises only "[w]hen the Employer has <u>any work specified in this Agreement</u> to be performed outside of the area covered by this Agreement." Appellant's App. Vol. II at 350 (emphasis added). Because the only work specified in the Local 77 CBA was the employment of helpers, it contends the district court erred in basing the award of damages on all categories of project work.

The district court concluded that it was the Colorado CBA rather than the Local 77 CBA that controlled the amount of damages, and we agree. While the traveling contractors clause is triggered only when Wilkinson performs work "specified in this Agreement" outside the Local 77 home area, the requirement to abide by the foreign affiliate's agreement is not so limited. When the traveling

-17-

contractors clause is triggered as in this case, "the Employer agrees to abide by the <u>full terms and conditions of the Agreement in effect at the job site area."</u> <u>Id.</u> (emphasis added). The Local 77 CBA does not limit Wilkinson's obligations to the foreign agreement's terms and conditions as they apply to helpers. As it did with respect to the scope of work covered by the Local 77 CBA, Wilkinson is trying to read into it an exclusion or limitation that the agreement simply does not contain. The full terms and conditions of the Colorado CBA require contributions based on all categories of project work. Thus, as to the claims of the trustees, the district court correctly relied on the Colorado CBA in determining the amount of damages and not limiting damages to helpers.

## C. Attorney fees and costs

Section 502 of ERISA, 29 U.S.C. § 1132(g), provides that

(2)  In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--

* * *

(D)  reasonable attorney's fees and costs of the action, to be paid by the defendant . . . .

This provision is mandatory. See Trustees of Colo. Statewide Ironworkers (Erector) Joint Apprenticeship & Training Trust Fund v. A & P Steel, Inc., 824 F.2d 817, 818 (10th Cir. 1987).

After the district court entered judgment on the merits in their favor, plaintiffs submitted their application for attorney fees and costs, which totaled $64,041.06. To support their application, plaintiffs provided copies of approximately 120 pages of itemized billing records containing a number of charges per page, along with an affidavit from a labor law attorney stating that the attorney reviewed the application and supporting records and that in his opinion, the fees requested were reasonable. In response, Wilkinson pointed out nine "examples" of claimed charges totaling $1,853.53 that appeared to refer to other matters, and contended that some other charges were not identified by matter. It therefore requested that the entire application be denied or that the court hold an evidentiary hearing.

Plaintiffs responded by providing further explanation regarding the specifically challenged items and withdrawing their claim for several of them, thus reducing their total claim by $1,000.70. Relying on the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), see Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994) (noting requirement to consider Johnson factors in assessing reasonableness of attorney fees), the district

court concluded that plaintiffs' application as adjusted was reasonable, denied defendant's request for an evidentiary hearing, and awarded plaintiffs attorney fees of $60,887.15 and costs of $2,153.21.

On appeal, Wilkinson contends that "[p]laintiffs' fee application was grossly flawed by the improper inclusion of charges attributable to other matters." Appellant's Suppl. Br. at 4. However, similar to its approach in the district court, it does not specifically identify the charges it claims were--or even might be--attributable to other matters, nor does it challenge the district court's consideration of any of the Johnson factors. Instead, it broadly argues that because it alleged (and in several instances, plaintiffs agreed) that the original application included some improper charges, the entire application lacked credibility and should have been denied or subjected to an evidentiary hearing.

We review the district court's award of fees and costs under ERISA for an abuse of discretion. See Pratt v. Petroleum Prod. Management, Inc. v. Employee Sav. Plan & Trust, 920 F.2d 651, 658 (10th Cir. 1990). Wilkinson does not argue, much less point to any evidence indicating, that plaintiffs' claimed fees were unreasonable. It simply contends that the amount of fees may be unreasonable. Such speculation is not enough to show that the district court abused its discretion. See Sheets v. Salt Lake County, 45 F.3d 1383, 1391 (10th Cir. 1995) ("Because Defendants have failed to substantiate these allegations [that the fees

were duplicative and exorbitant] with evidence or otherwise, they waived their right to an evidentiary hearing and consequently may not now challenge the district court's determination that the number of hours expended were reasonable.").[9]

III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment in No. 96-1205 as it applies to the plaintiff trustees and AFFIRM the award of attorney fees and costs in No. 96-1431 in its entirety. We REVERSE the judgment in favor of plaintiff Contractors Association in No. 96-1205 and REMAND the case to the district court for further proceedings consistent with this order and judgment.

Entered for the Court

Robert H. Henry
Circuit Judge

---

[9] Because we are reversing the district court's judgment on the merits in part, it might seem appropriate to reverse the award of attorney fees and costs. However, plaintiffs sought and were awarded their fees under 29 U.S.C. § 1132(g)(2) which applies only to claims under § 515 by plan fiduciaries, and Wilkinson does not argue that § 1132(g)(2) does not allow recovery of fees by the Contractors Association. We therefore consider any such argument waived, and affirm the entire award of fees and costs.